**E. W. SCRIPPS COMPANY et, Relator, v. FULTON, Judge, Respondent.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 23454.   Decided April 13, 1955.

432

Baker, Hostetler & Patterson, Cleveland, for relator.

Frank Cullitan, County Pros., David R. Hertz, Leo Rattay, Robert Wehr, Cleveland, for respondent.

**OPINION**

By SKEEL, J:

This is an action in prohibition, invoking the original jurisdiction of the court under the provisions of **Article IV, Section 6 of the Constitution of Ohio.**

The relators are seeking a writ prohibiting the respondent from enforcing an order excluding relators and all other members of the public from the court room over which he is presiding as Judge while the said Court is in session and during the time the trial of the case of State of Ohio v. Baker et al, is in progress, the defendants in said

case being charged with pandering, in violation of §2905.15 et seq, R. C., or at any other time, while the court is in session. The relators also seek a revocation of an order excluding relators and other members of the public from the court room presided over by the respondent, said order having been issued February 11, 1955.

The facts are not in dispute. The respondent is a duly elected and qualified Judge of the Court of Common Pleas of the County of Cuyahoga, Ohio. On the 11th day of February, 1955, he was presiding in Court Room 3 of the Criminal Division of said court, and was then conducting the trial of the case of State v. Baker et al. One of the state's witnesses, who to a degree might be called the prosecuting witness, had concluded her testimony in chief, and was about to be subjected to cross-examination by counsel for the defendants. At the defendants' request, an order excluding all members of the public from attending the trial was made by the court, it being claimed by their counsel that they would be "better able to compel the witness to tell the truth" if they could cross-examine her in private, that is, if all members of the public, including newspaper reporters, were excluded from the court-room. The respondent, upon the defendants making such request and signing written waivers of the right to a public trial, granted the request and ordered all members of the public out of the court-room during that part of the trial, except court personnel, the jury, counsel, and one witness for the defendants, posting a guard at the door to see that the order was carried into execution. This action seeking a writ of prohibition commenced during the time the relators' personnel and the public were excluded while the trial was in progress. It is now a matter of public knowledge that the case has been concluded and the effectiveness of the order of exclusion has come to an end, yet it is the desire of the parties that the legal question of the right of the court to make such an order be decided by this Court for a future guide should like circumstances occur, it being stipulated that the respondent has declared he will again exclude the public during trial of a felony under like circumstances.

A writ of prohibition is an extraordinary proceeding. By constitutional authority, a court of superior jurisdiction is authorized by its judgment to direct a court of inferior jurisdiction not to exceed its jurisdiction in the administration of justice. High, in his work dealing with the writ of prohibition, states that the elements that must be established upon which such a writ shall issue are: (1) that an officer seeks to exercise judicial power; (2) that the power about to be exercised, or the order about to be made, or attempted, is unauthorized by law; and (3) the person seeking the writ has no adequate remedy at law.

The writ of prohibition is not only available to a person when a court seeks to exercise jurisdiction which it does not have, but also when it does an act or threatens to act in excess of its legitimate or authorized powers.

The Supreme Court of Ohio, in the case of **State, ex rel. Nolan v. Clendening, 93 Oh St 264,** quotes with approval from Section 781 of High on "Extraordinary Remedies" as follows:

"The province of the writ is not necessarily confined to cases where

the subordinate court is absolutely devoid of jurisdiction, but it is extended to cases where such tribunal although rightfully entertaining jurisdiction of the subject matter in controversy, has exceeded its legitimate province."

There is no dispute but that the order about which relators complain was issued by a Judge of a court of record in a proceeding then on trial, the order not being concerned with the issues of the case but had to do with the right of members of the public to enter the court room during the progress of the trial. The persons, constituting members of the public, who were excluded did not have the right to enter an exception on the record because of their exclusion from the court room, yet, if there be a public right to observe a trial in courts of justice, the only way such right can be adjudicated would be by seeking, in an action for declaratory judgment, an order declaring the plaintiff's rights, or by seeking a writ of prohibition where the order as to the public attendance at the trial exceeds the jurisdiction of the court.

In the case of United Press v. Valenti, 308 N. Y. 71, the court held in paragraph 2 of the syllabus, where a like situation developed:

"2. Notwithstanding that the question on this appeal has become moot, the appeal should be entertained since the problem presented and the principle involved are of importance in the administration of the criminal law."

We hold that the relators have the right under the pleaded facts to maintain this action.

The question presented for our consideration is whether or not a trial judge has the power to conduct any part of a trial of one charged with felony in secret, or, to state the question a little more broadly, is it a necessary prerequisite in the administration of criminal justice that a trial of one charged with felony be a public trial where the public, with some discretionary limitations, hereafter to be considered, may attend and observe the proceeding? It must be observed that in this case the only reason for making the order excluding the public from attending the trial was the demand of the defendants that a part of their case be conducted in secret. No question of the public morals, safety or health was advanced or considered in making the order of exclusion.

Courts are public institutions. They are maintained by the public as a necessary part of the process of government in maintaining order and adjudging the legal obligations and rights of the people. Judicial power in a criminal case is exercised by an action in the name of the state in which action all have a deep and abiding concern. Any suggestion that law enforcement has any private aspects as to the manner in which justice is administered is completely without foundation. To permit trials of persons charged with felony to be held in secret, the order of secrecy being based entirely on defendants' request would take from the court its most potent force in support of the impartial administration of justice according to law.

A crime is a public wrong, one directly affecting every member of society and the trial of one charged with criminal conduct is for the determination of the question of whether the conduct of the defendant has violated the laws of the State enforced as a necessary part of main-

taining the social order. Blackstone says in Vol. 4 page 1428, paragraph 5 (Lewis' Edition):

"Public wrongs or crimes and misdemeanors are a breach and violation of the public rights and duties due to the whole community, considered as a community in its social aggregate capacity."

The community is deeply interested in the right to observe the administration of justice and the presence of its members at a public trial is as basic as that of a defendant whether such right be provided for in the Constitution or otherwise.

**Article I, Section 16** provides:

"All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay. Suits may be brought against the state, in such courts and in such manner, as may be provided by law."

In **Article I, Section 10**, it is provided that a defendant is entitled to a public trial. This constitutional provision is one for the benefit of the defendant. It does not, however, guarantee the defendant a private trial as against the public whose interests are equally involved in the judicious administration of the law.

Historically, there is no foundation for the administration of justice in secret. In the early writings of Greek scholars contributing to the development of Athenian law as administered in public forums, in which forums the democratic way had its beginning, we find the description of the out-of-door sessions of judicial tribunals on the hills about Athens. One famous place was the "Arcopagus" where the Senate likewise met and in the words of the goddess "Athena":

"This court majestic, incorruptible, the sleepless guardian of my land I set."

(Panorama of World Legal Systems by Wigmore.)

The common law of England, founded on the common experiences of the people, the writings of the early English legal scholars, the development of the Ions of court, the decisions of the traveling judges of the King's Bench and the trial of civil disputes in the courts of common pleas held in Westminster Hall, was in a degree influenced by the earlier civil law as developed in the open tribunals of Rome The basis of the constitutional guarantee of an "open court" is to be found in the development of the common law and would be a recognized right of the people without constitutional sanction.

It can never be claimed that in a democratic society the public has no interest in or does not have the right to observe the administration of justice. The open court room is as necessary and important in the interest of supporting the administration of justice as in the protection of the rights of a member of the public when on trial for a criminal offense.

In the case of State v. Copp, 15 N. Hamp. Rep. 212, the court, in considering the case of one charged with resisting an order of exclusion as a disturber in a court proceedings, said at page 218:

"But the law never intended that the prisoner should have the power to station himself in any position he might desire during the trial. If

it rested with him to select the location he might find most, convenient, he might see fit to place himself upon the bench or in the jury box. He was present at this trial neither as a party or a witness. He went there to gratify his curiosity, and it behooved him to so conduct as not to disturb the proceedings of those who had duties to perform. These duties cannot be discharged unless the justice possesses the power upon an emergency to direct the removal of any individual whose presence he may think prejudicial to the interests of justice. The law does not, indeed, authorize any court to act arbitrarily and unreasonably exclude persons **but the right to have the court open is the right of the public and not the individual.**" (Emphasis ours.)

In the case of United States v. Kobli, 172 Fed. 2d, 919, the defendant was on trial charged with a violation of the "Mann Act." The case had attracted some notoriety. When the case was called, the court room was "filled to overflowing" with spectators in no way connected with the trial, including a number of young girls. The trial court thereupon excluded all members of the public, except members of the press, and those directly involved in the case.

One of the defendants objected on the basis that such order prevented her from enjoying the constitutional right to a public trial. The Circuit Court of Appeals reversed the conviction of the defendant on the ground that her constitutional rights had been violated. Headnotes Nos. 2, 3, 4, 8 and 10 provide:

"2. A violation of constitutional right to a public trial necessarily implies prejudice, and defendant need not point out any definite personal injury.

"3. The knowledge that every criminal trial is subject to contemporaneous review in forum of public opinion is regarded as an effective restraint on possible abuse of judicial power. U. S. C. A. Const. Amend. 6.

"4. An important purpose of constitutional guarantee of public trial is the reasonable possibility that persons unknown to parties or their counsel might voluntarily come forward to testify, and another purpose is the enabling spectators to learn about their government and acquire confidence in their judicial remedies. U. S. C. A. Const. Amend. 6.

"8. The constitutional requirement of a public trial precludes general indiscriminate exclusion of the public from the trial of a criminal case in a federal court over defendant's objection and limits trial judge to exclusion of those persons or classes of persons only whose particular exclusion is justified by lack of space or for reasons particularly applicable to them.

"10. In prosecution on charge of violating the Mann Act, trial judge's order clearing courtroom of all people except jurors, witnesses, attorneys and members of the press, over defendant's objection constituted denial of her constitutional right to 'public trial' notwithstanding that order was made for purpose of protecting morals of a large group of youthful spectators in courtroom, and prejudicial error resulting therefrom was not cured by subsequent offer to readmit such persons whom defendant might designate and who were connected with the case. 18 U. S. C. A. Secs. 2421, 2422; U. S. C. A. Const. Amend. 6."

And on page 923, the court says:

"We are satisfied that the framers of the Sixth Amendment believed it to be essential to the preservation of the liberty of the individual that, to the extent and within the limits which we have indicated, members of the general public should be admitted to every criminal trial even though it might appear that, in a case such as the one before us, most of them come only out of morbid curiousity. This concept of the common law which the framers believed important to be preserved as a protection for the individual and a restraint upon the possible abuse of judicial power was well expressed by Justice Bayley for the Court of Kings Bench in the case of Daubney v. Cooper, 1829, 10 B & C 237, 240, 109 Eng. Re. 438, 440 as follows:

" "* * * we are of opinion, that it is one of the essential qualities of a Court of Justice that its proceedings should be public, and that all parties who may be desirous of hearing what is going on, if there be room in the place for that purpose,—provided they do not interrupt the proceedings, and provided there is no specific reason why they should be removed,—have a right to be present for the purpose of hearing what is going on.' "

In the case of **State v. Hensley, 75 Oh St 255**, the court, on pages 265 and 266, in considering the constitutional right of a defendant to have a public trial in a rape case, said:

"* * * how much should be, and we think is necessarily and properly left to the trial judge who is obliged to insist upon the orderly conduct of the public business and whose highest duty is the securing to the parties the defendant as well as **the State, a fair and impartial trial; but the people have the right to know what is being done in their courts and free observation and the utmost freedom of discussion of the proceedings of public tribunals,** that is consistent with truth and decency, tends to the public welfare * * *." (Emphasis added)

And in the case of **State v. Grissfulli, 135 Oh St 87**, the court in defining a criminal trial, said:

"In its strict definition, the word 'trial' in criminal procedure means the proceedings in open court after the pleadings are finished and the prosecution is otherwise ready. * * *"

In the case of State v. Holm, reported in 224 P. 2d, 500, the court engaged in an exhaustive analysis of the case law on the subject of a "public trial." Headnotes Nos. 16 and 17 provide:

"16: Criminal trial must be public though there is no specific provision to that effect in the State Constitution.

"17: A trial court in a criminal prosecution should be cautious in making an order of exclusion of spectators from a trial and should do so only when public interest necessarily requires it."

And on page 508 of the report the court said:

"The Attorney General contends that the Constitution of this state does not guarantee a defendant in a criminal case a public trial. It is true that no specific provision to that effect is contained in the Constitution of this state along with the Constitutions of only three other states, namely, Massachusetts, New Hampshire and Virginia. But the Supreme Court of the United States has held that due process of law includes those immutable principles of justice which inhere in the very

idea of free government. Holden v. Hardy, 169 U. S. 366, 389, 18 S. Ct. 383, 42 L. Ed. 780, and those fundamental principles of liberty and justice which lie at the base of all our civil and political institutions. Herbert v. Louisiana, 272 U. S. 312, 316, 47 St. Ct. 103, 71 L. Ed. 270. And in the case of In re Oliver, 333 U. S. 257, 273, 68 St. Ct. 499, 507, 92 L. Ed. 682, the Supreme Court held that:

" 'In view of this nation's historic distrust of secret proceedings, their inherent dangers to freedom, and the universal requirement of our federal and state governments that criminal trials be public, the Fourteenth Amendment's guarantee that no one shall be deprived of his liberty without due process of law means at least that an accused cannot' be sent to prison without a public trial. Hence, there seems to be but little choice for this court in determining whether anything less than that is meant by **Section 8, Article 1, Ohio Constitution** which says that:

" 'All courts shall be open,' and by **Section 6 of Article 1** which provides that 'No person shall be deprived of life, liberty or property without due process of law.' However, that may be, the authorities seem to be in agreement that a public trial was a common law right and since this state has adopted the common law, the right to a public trial is, in the absence of a statute—and we have none—as good a guarantee as though it were contained in our Constitution. As early as 1565, Sir Thomas Smith, writing on the laws of England, wrote of the necessity of as many persons as might be present hearing what witnesses had to say. Sir Matthew Hale in 1670 wrote of the excellence of trials in England by reason of having the courts open to the public. See 6 Temple Law Quarterly 382. In Blackstone in his Commentaries III, 373, the author states:

" 'This open examination of the witnesses "viva voce" in the presence of all mankind is much more conducive to the clearing up of truth than the private and secret examination taken down before an officer or his clerk in the ecclesiastical courts and all others that have borrowed their practice from the civil law, where a witness may frequently depose that in private which he will be ashamed to testify in a public and solemn tribunal.'

"See also the statement of Jeremy Bentham, Rationale of Judicial Evidence as quoted in VI Wigmore On Evidence (3rd Ed) Section 1834. In the case of Commonwealth v. Fugmann, 330 Pa. 4, 198 A. 99, III, the court states: (in dealing with the essentials of a criminal case)

" 'The essentials of a trial by jury of a defendant in a criminal case as known at the common law were; (1) a jury composed of twelve eligible persons duly summoned, sworn and impaneled for the trial of the issue; (2) a plea entered; (3) an ample right of challenge both for cause and peremptorily, secured to defendant; (4) a full, fair, and public trial "under the superintendence of a judge empowered to instruct them on the law and to advise them on the facts * * *"; (5) proper and sworn testimony for the jury's consideration; (6) unanimity of the vote supporting the verdict * * * A departure from any of these essentials would be a deprivation of "the right to trial by jury." See also Commonwealth v. Blondia, 324 Mass. 564, 87 N. E. 2d, 455.' "

In the case of People v. Hartman, 103 Cal. 242, 37 P. 153, 154, the court said:

"The trial should be 'public' in the ordinary common sense acceptation of the term. The doors of the court room are expected to be kept open, the public are entitled to be admitted and the trial is to be public in all respects as we have heretofore suggested, with due regard to the size of the court room, the convenience of the court, the right to exclude objectionable characters, and youth of tender years, and to do other things which may facilitate the proper conduct of the trial."

In Vol. VI, 3rd Ed. of Wigmore on Evidence, parag, 1834 and 1835, the subject is dealt with from the standpoint of the effect of a public trial "as security for testimonial trustworthiness."

On page 332, the author says:

"Its operation intending to improve the quality of testimony is twofold. Subjectively, it produces in the witness' mind a disinclination to falsify; first, by stimulating the instinctive responsibility to public opinion, symbolized in the audience and ready to scorn a demonstrated liar; and next, by inducing the fear of exposure of subsequent falsities through disclosure by informed persons who may chance to be present or to hear of the testimony from others present. Objectively, it secures the presence of those who by possibility may be able to furnish testimony in chief or to contradict falsifiers and yet may not have been known beforehand to the parties to possess any information."

There are many cases to be found which hold that a defendant is privileged to waive his constitutional right to a public trial, and where he has waived such right, he cannot thereafter complain. The facts in this case show that the defendants waived the right to a public trial in writing. Certainly they cannot now prosecute error where the court excluded the public at their request. But the defendants cannot waive the right of the people to insist that the proceedings of the courts, insofar as practicable and in the interest of the public health and public morals, be open to public view. In other words, a defendant has no right, constitutionally or otherwise, to a private trial, that is, one hidden from the public view.

In coming to this conclusion, we do not recede from our conclusion in the case of **State v. Clifford, 97 Oh Ap 1,** affirmed **162 Oh St 370.** The courts must be conducted in the interests of maintaining liberty under law. The litigants are the first consideration of the court and the judge may enforce reasonable rules to afford complete court room decorum and prevent any and all activities not directly connected with the trial which would in the slightest distract the attention of those engaged in the proceedings.

The judge in exercising his complete control of the proceedings may exclude those whose conduct is of a disturbing nature, or whose presence is likely to interfere with the administration of justice as well as making such orders of exclusion as will protect the public health, the public morals and the public safety. With these limitations it is the duty of the trial judge to afford both the state and the defendant a trial in "open court."

It is suggested that the relators are the only contending parties in this action and that they are seeking a privilege for personal advantage. We do not so read the record. Private rights are not here involved.

The contentions here are on behalf of the public. The trial of a criminal case is a judicial proceeding to be conducted in "open court," and open to public view. The trial of a criminal case is a public matter; an action filed in the name of the State. The rights of representatives of the press can, however, rise no higher and by the same token, can be no less, than the rights of any other member of the public. So long as the means adopted in observing trial events stay within the rules of court and do not distract from or disturb the solemnity of the proceeding which is so necessary in the conduct of a public trial in the administration of justice, the right of an employee of a newspaper is the same as any other person. It might be suggested that since a great majority of the public, either because of lack of time or space limitations of the court room, or for lack of direct interest, are prevented or unable to attend judicial proceedings whereby their knowledge about such proceedings can be gained only through the work of news-gathering and disseminating agencies, and therefore, when judicious limitation of those attending a public trial is necessary, such fact should be considered in favor of allowing members of the press to attend. We think there could be no injustice in giving consideration to circumstances of this kind.

We are not here concerned with freedom of speech or of the press, or what should be reported through or by the press or news-gathering agencies. The criminal law must of necessity deal with matters not generally the subject of parlor conversation. We are not called upon to consider the propriety of publishing the sordid details of a criminal trial. It must be recognized that in such a trial, the trial judge not only has the right but is duty bound to exclude from a trial involving a morals offense those, who by reason of immaturity or otherwise would be harmfully affected in attending such a proceeding.

This does not mean that such a proceeding should be conducted in secret. The public morals are not protected by trying to hide its sins behind closed doors. Better that we know our faults that we may ever increase our efforts to live in social rectitude.

From the agreed facts in this case, no question of public health was involved, nor could it be said that the public morals were given consideration or formed the basis of the order of total exclusion of the public from the trial and locking the court room doors while a part of the trial was in progress. Those attending in no way were disturbing the trial. The sole ground for the total exclusion was at the request of the defendants, it being claimed by them that if the members of the public were excluded, they might be able to make the witness "tell the truth" or at least what their version of the truth might have been Such a request cannot be justified and the order excluding the public from a public trial was, under the agreed facts of this case, without legal foundation.

Writ allowed. Exceptions. Order see journal.

KOVACHY, PJ, HURD, J, concur.

## CONCURRING OPINION

No. 23454.   Decided April 13, 1955.

By HURD, J.

This is a case of first impression in Ohio of such public importance and concern that I desire to express certain of my own views, in addition to those set forth by Judge Skeel.  The facts, having been stipulated by the parties, a single question of law is presented, which may be phrased thusly:

Does the court have the power to close the court room to the public and the press during the trial of a criminal case at the request of the defendant who waives in writing his right to a **public trial**?

It is so contended by the County Prosecutor and other counsel who represent the trial judge in this proceeding.  It is by them argued that the right of the accused to a public or private trial rises or falls with the accused; that the accused, by waiving his right to a public trial may, by his mere request, foreclose the right of the public and the press to have the Courts open and free to access.  The argument assumes that because the accused is guaranteed the constitutional right of a public trial, he, by waiving such right, must be allowed the absolute right to a private or secret trial.

In my opinion this argument is untenable.  It is based upon a false premise and leads to a false conclusion.  The waiver by a person of a constitutional right does not ipso facto grant a right not otherwise sanctioned by law or the Constitution.

In Ohio, the "open court" concept is derived from two basic sources, namely, (1) the Constitution of the State and (2) recognized principles of the Common Law.

**Article I, Section 16 of the Ohio Constitution** presently provides as follows:

"**All courts shall be open,**—and—every person for an injury done him in his lands, goods, person, or reputation shall have remedy by due course of law and shall have justice administered without denial or delay. Suits may be brought against the State in such courts and in such manner as may be provided by law."

It will be noted from the phraseology of the first four words of the section that there is a mandate in unequivocal terms that "all courts shall be open."  This is a positive statement, the meaning of which cannot be misconstrued.  While in the same section, the Constitution goes on to say "Every person for an injury done him * * * shall have remedy by due course of law. * * *" such provision does not nullify that part of the section which provides that all courts shall remain open.

The Respondent, by way of brief and argument, contends that the word "open" as used in this section of the Constitution means, open to persons who have need for judicial redress; that it means also, open to **litigants only** because the section in part deals with the rights of litigants.  This argument ignores completely the significance of the separation of the open court phrase from the phrase providing for the redress of injuries.  As the section now stands, there are three separate concepts, namely, (1) that the courts shall remain open;  (2) that all

persons shall have remedy for the redress of grievances and (3) that suits may be brought against the state. The use of a comma after the word "open" followed by the conjunction "and" is important here as connoting a separation of concepts. If the framers in convention assembled had intended otherwise, it is reasonable to conclude that they would have so said in plain, unambiguous and unmistakable terms. This idea is supported by records of the Constitutional Debates which indicate great care on the part of the members of the Constitutional Conventions in the use of language to express their intentions. A review of the history of the Constitutional Conventions and the Debates in connection therewith serves to emphasize this fact and to point up the three separate concepts now contained in **Article I, Section 16,** above quoted.

Ohio has had four Constitutional Conventions, known generally as the Conventions of 1802, 1850, 1873-74 and the Fourth Constitutional Convention of 1912.

The first Convention met at Chillicothe on Monday, the first day of November, 1802, when representatives of the people met to form a constitution and state government for that portion of the Northwest Territory which was to become the State of Ohio. On Thursday, November 4, after adopting rules of order of the Convention, electing a president and voting to become a state, it was ordered "that a committee of nine be appointed to prepare a Bill of Rights and a Schedule for the purpose of carrying into complete operation the Constitution and Government." On Friday, November 26th, the eight articles of the Constitution (the Bill of Rights and the Schedule) were read for the third time and adopted. Article VIII, Section 7 contained the words "All courts shall be open,— and—every person having injury done him in his lands, goods, person or reputation shall have remedy by due course of law and shall have justice administered without denial or delay."

Again in February, 1850, an Act to call a Convention was passed, the purpose being to revise, amend or change the Constitution of the State. On Thursday, January 2, 1851, the seventy-seventh day of the Convention, the Committee on the Preamble and the Bill of Rights submitted their report. Under their report the Preamble and Bill of Rights was followed by Article I of the Constitution, which in its various sections, comprises the Bill of Rights. Nineteen Sections were listed but the provision "that all courts shall be open" was not included. However, on January 16, 1851, the provision with respect to "open courts" at the suggestion of Delegate Rufus Ranney, was again included and adopted as part of the Bill of Rights. On February 21st, at the afternoon session of the 121st day, the Preamble and Bill of Rights were passed without any discussion and on Wednesday, March 5, 1851, the Section beginning, "all courts shall be open" was established as part of **Section 16 of Article I.** (See Ohio Constitutional Convention Debates, Vol. 1 & 2.)

In the Constitutional Convention of 1873-74, on Wednesday, March 4, 1874, the Committee on the Preamble and Bill of Rights reported that having considered the Preamble and Articles of the Constitution, they reported them as they stood without any amendment. This was followed by a full day's discussion of the Preamble, following which the

Sections were voted upon separately. There was no discussion on Section 16, providing in part that "all courts shall be open" and the same was once again adopted as the fundamental law of Ohio.

On Tuesday, January 9, 1912, the Fourth Constitutional Convention convened at Columbus, at which time the provision that "courts shall be open" was again adopted as part of **Section 16 of Article I**, but was further amended to read: "Suits may be brought against the State in such courts and in such manner as .may be provided by law." This Section as amended was presented to the voters of Ohio as Proposal No. 4 on the ballot and adopted and now is in the form first above quoted.

Historically, it is important to note that Ohio was carved out of the original Northwest Territory consisting of the area presently comprising the following five states: Ohio, Michigan, Indiana, Illinois, and Wisconsin. While these states were governed originally by the laws of the Northwest Territory, upon their entry into the family of states, each drew up a Constitution as a foundation for their own laws and government. It should also be noted that the Ordinance for the Government of the Territory of the Northwest did not include a provision that "all courts shall be open" but provided inter alia that "The inhabitants—shall always be entitled to the benefit—of **judicial proceedings according to the course of the Common Law**." (Emphasis added.)

Two states of the original Northwest Territory have adopted as part of their Constitution the phrase: "all courts shall be open," namely, Ohio and Indiana. Thus the Indiana Constitution, Article I, Section 12, reads:

"All courts shall be open; and every man for injury done to him in his person, property, or reputation shall have remedy by due course of law. Justice shall be administered freely and without purchase; completely and without denial; speedily, and without delay."

Wisconsin provides for open and public courts by Statute as follows:

"The settings of every court shall be public and every citizen may freely attend the same, except when otherwise expressly provided by law on the examinations of persons charged with crime; provided, that when in any court a cause of a scandalous or obscene nature is on trial, the presiding judge or justice may, in his discretion, exclude from the room where the court is sitting, all minors not necessarily present as parties or witnesses." Wisc. Statutes 256.14.

The historical origin of the concept of "open court" in the United States appears first to have been included in the "frame of government of Pennsylvania of 1682." This document, under the signature of William Penn, contains the following provisions:

"V. That all courts shall be open, and justice shall neither be sold, denied or delayed.

"VI. That, in all courts all persons of all persuasions may freely appear in their own way, and according to their own manner, and there personally plead their own cause themselves; or, if unable, by their friends: . . ."

5 Thorpe, American Charters, Constitutions and Organic Laws, 1492-1908, p. 3060.

In the Charter of the Fundamental Laws of New Jersey, agreed upon in 1676, is the following provision of Chapter XXIII:

"That in all public courts of justice for tryals of causes, civil or criminal, **any person or persons, inhabitants of the said Province may freely come into, and attend the said courts, and hear and be present, at all or any such tryals as shall be there had or passed, that justice may not be done in a corner nor in any covert manner,** being intended and resolved by the help of the Lord, and by these our Concessions and Fundamentals, that all and every person and persons inhabiting the said Province, shall, as far as in us lies, be free from oppression and slavery." 5 Thorpe, p. 2551. (Emphasis added.)

To the same effect, see also the Constitutions of Vermont (1777), Chapter II, Section XXIII, 6 Thorpe, p. 3746; Kentucky (1792), Article XII, Section 13, 3 Thorpe, p. 1275; and, Tennessee (1796), Article XI, Section 17, 6 Thorpe, p. 3423, states admitted to the Union immediately prior to Ohio.

The historical background here set forth prior to the Constitution as amended in 1912 demonstrates two separate concepts: (1) that all courts shall be open as set forth in the Constitution of Ohio and the Constitution of Indiana, and the other concept that every person having injury done him shall have remedy by due process of law. The Indiana Constitution, Article I, Section 12, has a semicolon following the word "open" after which there is a provision for redress of injuries while in the Ohio Constitution, the separation is by a comma. However, in both cases, the separation of concepts is clear and unmistakable. Undoubtedly the Section had a twofold purpose: (1) to insure that justice should be administered in open court and (2) that all persons should be guaranteed the rights of due process of law which is likewise provided by the Federal Constitution. It is, we think, futile to argue that the words "all courts shall be open" as contained in the Ohio Constitution, must be restricted in meaning. Such a construction does violence to the plain words of our Constitution. The rule that statutes or bills or acts of the Legislature shall contemplate but a single subject is not applicable to a constitutional provision. In this connection, it is well to note the amendment made to **Article 1, Section 16** of the Constitution of 1912 to the effect that the State may be sued, which creates the third concept as the Constitution stands today. While the Ohio Constitution grants the accused in a criminal proceeding the right to a speedy public trial which is for his benefit, he has no absolute right to a private trial merely because he waives his right to a public trial.

We conclude, therefore, that because the Constitution expressly provides "that all courts shall be open," a judge, though acting with the best intentions, and from the highest motives as in this case, may not arbitrarily close the courts to public view or deny the public and the press the right to attend and witness the proceedings conducted in open court.

Considering now the second proposition above stated, namely that the "open court" principle is likewise derived from the Common Law, I think we may assert with assurance that the constitutional provisions hereinbefore discussed are declarative of the Common Law.

Counsel for the Respondent in oral argument and brief place great stress upon the decision of the New York Court of Appeals in Matter of

United Press Associations, et al v. Valente, Judge, etc., (Dec. 31, 1954) 308 N. Y. 71. That case was decided on the same day that the court decided People v. Jelke, 308 N. Y. 56. In the Jelke case, the court granted a new trial at the instance of the defendant who had not waived his right to a public trial, a statutory right in New York. In the Valente case, a majority of the Court, with two judges dissenting and one judge abstaining, held that press associations and newspaper publishers have no greater rights than any other citizens to attend court sessions and denied relief to the plaintiffs. We have examined that case carefully and have concluded with all due respect that the majority opinion is inapposite here in view of the provisions of our Ohio Constitution, neither do we find it consistent with the spirit of the Common Law as developed in Ohio. The Constitution of New York does not contain a provision such as is contained in the Constitution of Ohio to the effect that "all courts shall be open."

In considering the Valente case, it should be noted that Section 4 of the Judiciary Law of New York provides:

"Sittings of court to be public. The Sittings of every court within this state shall be public, and every citizen may freely attend the same, **except** that in all proceedings and trial in cases for divorce, seduction, abortion, rape, assault with intent to commit rape, sodomy, bastardy or filiation, the court may, in its discretion, exclude therefrom all persons who are not directly interested therein, excepting jurors, witnesses, and officers of the court."

It was the exception contained in the Judiciary Law, not contained in any Ohio Statute, that apparently was relied upon by Valente, J. in the case of People v. Jelke, when he closed the court room to the press and public. It is our view that the opinion of Froessel, J. (concurred in by Dye J.) is more applicable to the spirit of the Common Law of Ohio and in accord with the provisions of our Constitution. In the course of the opinion, Froessel, J., at page 89, states in part as follows:

"**The right of the public to attend a criminal trial, like the right of an accused defendant to a public trial, stems from the deep roots of the common law.**" (Emphasis added.)

After citing and quoting from text authorities, including Blackstone's Commentaries, Hale's History of the Common Law of England; Jenks, The Book of English Law; 9 Halsburys' Laws of England; 1 Bentham, Rationale of Judicial Evidence, in support of his opinion, Judge Froessel further stated at page 91:

"The public right concept has also frequently been adverted to by the courts: 'The inveterate rule is that justice shall be administered in Open Court.' (Scott v. Scott, [1913] A. C. 417, 445); 'One of the demands of a democratic society is that the public should know what goes on in courts by being told by the press what happens there, to the end that the public may judge whether our system of criminal justice is fair and right.' (Maryland v. Baltimore Radio Show, 338 U. S. 912, 920); 'The knowledge that every criminal trial is subject to contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power.' (Matter of Oliver, 333 U. S. 257, 270) * * * 'In this country it is a first principle that the people have

the right to know what is done in their courts.' (Matter of Shortridge, 99 Cal. 526, 530); 'The people are interested in knowing, and have the right to know, how their servants * * * conduct the public's business.' (State v. Keeler, 52 Mont. 205, 218): 'It is an undeniable proposition, to start with in this discussion that courts of justice should be open to the public.' (Williamson v. Lacy, 36 Me. 80, 82.)"

We have heretofore adverted to the Ordinance for the Government of the Northwest Territory providing that the inhabitants should be entitled to the benefit of judicial proceedings "according to the course of the Common Law." Since the foundation of Ohio as a State, our courts have uniformly given support to the doctrines of the Common Law when applicable.

In **Railroad Company v. Keary, 3 Oh St 202 (1852)** it was held by Ranney J. that:

"**The common law of England,** when not inconsistent with the genius and spirit of our own institutions, and thus rendered inapplicable to our situation and circumstances, **furnishes the rule of decision in the courts of this State.**" (Emphasis added.)

For similar dicta, see the earlier cases of **Bloom v. Richards, 2 Oh St 387 (1853)** Thurman J., and Lessee of Lindsley v. Coats, 1 Ohio Repr. 243 (1823).

The opinion of Judge Skeel contains an excellent discussion of the Common Law principle of "open court" and I shall not attempt to add further to this phase of the subject except to stress, as he does, the importance of the case of **State v. Hensley, 75 Oh St 267.**

The courts belong to the people, we have said many times. They have been established by the people for the administration of justice according to law and are not to be considered as the private domain of any person or group of persons.

In Craig v. Harney, 331 U. S. 367, decided in 1947, the Supreme Court of the United States said:

"A trial is a public event. Those who see and hear what transpired can report it with impunity * * *. There is no special perquisite of the judiciary which enables it as distinguished from other democratic government, to suppress, edit or censor events which transpire in proceedings before it."

Certainly the accused may not lawfully insist upon a private or secret trial nor may he waive the right of the public to an "open court." To hold otherwise would lead to many mischiefs. If an accused in one case should be allowed the right of a private trial, then the accused in another case would equally be entitled to the same privilege, leading to a series of private trials upon the request of the accused, or if an accused, as in the instant case, decided for some purpose of his own to have one part of his trial public and the other private, court proceedings would take on a strange aspect never contemplated in our judicial system. The result would be "reductio ad absurdum." Crime and corruption grow and thrive in darkness and secrecy. Justice thrives in the open sunlight of day. If we deny to the public and press access to courts of justice. we foster a system of jurisprudence heretofore unknown in the history of Ohio.

I come now to another proposition which I think deserves some comment.

**Article I, Section II of the Ohio Constitution** provides in part as follows:

"Every citizen may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of the right; **and no law shall be passed to restrain or abridge the liberty of speech, or of the press.**"

The First Amendment to the Constitution of the United States provides in part:

"Congress shall make no law * * * abridging the freedom of speech or of the press; * * *"

This amendment being applicable to the States, the Legislature of the State of Ohio may not by law abridge the freedom of speech or the press. Likewise the judicial branch of the government is bound by the same constitutional guarantees.

Recently this Court, in the case of State of Ohio v. Clifford, involving the claimed right of the defendants, three in number, employees of the Cleveland Press, to take photographs of the proceedings during the time in which the court was in session in violation of a direct order of the court, affirmed a judgment of contempt imposed by the trial court, which was affirmed by our Supreme Court. (See **97 Oh Ap 1** and **162 Oh St 370.**) In the course of that opinion, which was approved and adopted as the opinion of the Supreme Court, we stated ᵢ at **page 6, 97 Oh Ap** supra **(162 Oh St 373)**:

"A court in enforcing reasonable courtroom decorum, is preserving the constitutional and unalienable right of a litigant to a fair trial, and in preserving such right, **the court does not interfere with the freedom of the press.** * * * A fearless and untrammelled judiciary is a necessary bulwark in protecting liberty under law and in preserving the rights of the people. **There is no claim in this proceeding that all who wanted to attend this session of the court were not permitted to do so, or that the opportunity to report the proceeding was not afforded in keeping with courtroom decorum, such right being limited by requiring that the reporter act so that the proceeding of the court should not be disturbed.**" (Emphasis added.)

Considering the language above quoted and emphasized, there is a clear implication that if the trial judge had barred the representatives of the press from attending and reporting the proceedings in question, so long as they acted with due decorum and obeyed the orders of the court, freedom of the press would have been an issue.

There can be no claim in the instant case that the presence of representatives of the press or public would per se create unnecessary disturbance and distraction or disorder. It is, therefore, a necessary corollary to the dictum of State v. Clifford, supra, that citizens, subject to well defined exceptions, generally set forth in Judge Skeel's opinion, as represented by the public and the press have a right to be present at court proceedings subject to such reasonable rules as may be promulgated by the court. If the courts are public institutions which shall remain open, the representatives of the public and the press, so long as they observe due decorum and obey all reasonable rules laid down

by the court, have the right to see, hear and report proceedings of the courts, being responsible always for the abuse of such right.

I agree with Judge Skeel that the rights of the representatives of the press can rise no higher than that of the members of the public generally and that they possess no greater rights than other citizens but I think they have equal rights which should not be denied, being subject always to all lawful and reasonable orders imposed on all citizens to insure the administration of justice according to law in an atmosphere of dignity, decorum, fairness and impartiality. Furthermore, it is the duty of the trial judge so to control the proceedings in his courtroom that these objectives shall be effectively secured and maintained in such a manner that no persons attendant upon the trial shall be allowed in any way to impede the fair and impartial administration of justice.

The relationship of the press to the courts has been well stated by the Supreme Court of Mississippi in Brannon v. State, 29 Southern Reporter 2nd p. 917 (April 7, 1947) headnote 3, as follows:

"The conception of 'freedom of the press' in its relationship to the courts contemplates that the press, subject to certain exceptions, has right to learn and publish with accuracy legitimate facts of trials during the public progress thereof provided the press does so without impeding the process of judicature and the administration of the business of the court."

The issue as to whether the question before us is now moot because the incident has passed, I think is easily disposed of by examination of Stipulation No. 15 which reads as follows:

"If, in the future, while Respondent Judge Fulton is assigned to the Criminal Branch of the Cuyahoga County Common Pleas Court, a defendant executes and tenders to him in due form a waiver of a public trial, he will deem it his duty to exercise his discretion, in the interest of a fair and orderly trial, to consider the extent to which he should exclude members of the public, including newspapermen, and that the said Judge Fulton considers it to be within his jurisdiction and power to exercise his discretion, if circumstances warrant, to exclude entirely from his court room all members of the public, including newspapermen."

For the reasons stated, it is my view that the writ of prohibition should be allowed to issue as prayed for.