422 So.2d 1135 (1982)
STATE of Louisiana
v.
Solomon BIRDSONG, Jr.
No. 82-K-1346.
Supreme Court of Louisiana.
November 29, 1982.
*1136 Wellborn Jack, Jr., Jack, Jack, Carey & Carey, Shreveport, for relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Paul Carmouche, Dist. Atty., for respondent.
MARCUS, Justice.
Solomon Birdsong, Jr. was charged by the grand jury in separate indictments with first degree murder in violation of La.R.S. 14:30 and armed robbery in violation of La.R.S. 14:64. Subsequently, he filed a motion to suppress, inter alia, a confession made by him. Prior to commencement of the suppression hearing, defendant moved "to close to the public and the press the pretrial hearing on his motion to suppress." After a hearing, the motion was denied. On defendant's application, we granted a writ under our supervisory jurisdiction to review the correctness of that ruling.[1]
Defendant contends the trial judge abused his discretion in denying his motion to close the hearing to the press and public after making a showing of prejudice to his right to a fair trial. Hence, the narrow issue presented for our determination is whether a defendant has a right to have a pretrial hearing on a motion to suppress his confession closed to the public and press if public disclosure of the proceeding will prejudice his right to a fair trial.
In the relatively recent case of Gannett Co. v. DePasquale, 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979), the United States Supreme Court was confronted with a somewhat similar situation except that the defendants, the prosecutor, and the trial judge all had agreed that the closure of the pretrial suppression hearing was necessary to protect the defendants' right to a fair trial. In Gannett, it was the press who was complaining about the closure. The Court held that to safeguard the due process rights of the accused, the trial judge has an affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity. Because of the constitution's pervasive concern for these due process rights, the trial judge may surely take protective measures even when they are not strictly and inescapably necessary. The Court recognized that publicity concerning a pretrial suppression hearing poses special risks of unfairness. The whole purpose of such a hearing is to screen out unreliable or illegally obtained evidence and insure that this evidence does not become known to the jury. Publicity concerning the pretrial hearing could influence public opinion against a defendant and *1137 inform potential jurors of inculpatory information wholly inadmissible at the actual trial. Closure of a pretrial proceeding is often one of the most effective measures that a trial judge can employ to attempt to insure that the fairness of a trial will not be jeopardized by the dissemination of such information throughout the community before the trial itself has ever begun.
Although the Court held that the trial judge has a constitutional duty to minimize the prejudicial effects of pretrial publicity so as to afford a defendant his due process rights to a fair trial, the Court also noted that a defendant does not have a constitutional right to compel a private hearing. There are competing interests. There is a countervailing public policy which is a strong societal interest in public trials.[2] "Openness in court proceedings may improve the quality of testimony, induce unknown witnesses to come forward with relevant testimony, cause all trial participants to perform their duties more conscientiously, and generally give the public an opportunity to observe the judicial system." Gannett, supra, at 383, 99 S.Ct. at 2907. Nevertheless, the Court also held that the sixth amendment's guarantee to the accused of a public trial gave neither the public nor the press an enforceable right of access to a pretrial suppression hearing. In weighing these competing interests, both the majority and the minority agreed that there are certain circumstances where an accused's right to a fair trial will transcend the strong societal interest in open judicial proceedings.[3] Unfortunately, the majority opinion in Gannett failed to set forth the circumstances under which a defendant would be entitled to a closed pretrial hearing. The dissent, although recognizing a right to closure, imposed such a severe burden (limiting closure to those cases where it is strictly and inescapably necessary in order to protect the fair-trial guarantee) that "[i]t is difficult to imagine a case where closure could be ordered appropriately under this standard."[4]
In State v. Kent, 391 So.2d 429 (La.1981), the issue of defendant's right to a closed hearing on his motion to suppress was presented to this court for the first time after the Gannett decision. We noted that while Gannett recognized that the trial court may permit a defendant to waive his sixth amendment right to a public proceeding, there was no concommitant right to a closed proceeding. We pretermitted the question of whether it is ever an abuse of discretion for a trial court to refuse to close a pretrial proceeding at the request of the accused. We held that it was enough for the resolution of the merits of defendant's contention to hold that he made no showing that he was prejudicially affected by the trial court's denial of his request. We further held that defendant had not shown that other methods of protecting himself from the adverse effects of pretrial publicity would not have adequately assured a fair trial. We noted that a motion for a continuance and for a change of venue were both means of counteracting the possible adverse effects of pretrial publicity. It should be observed that the issue in Kent was presented to us on an appeal from a conviction rather than from a pretrial ruling as *1138 here. See also State v. McDonald, 404 So.2d 889 (La.1981).
Requiring a defendant to show actual prejudice resulting from the denial of a closed pretrial suppression hearing and that alternate methods of protecting himself from the adverse effects of pretrial publicity would not have assured a fair trial is an appropriate standard of appellate review;[5] however, prior to trial, a defendant, as here, should only have to show a reasonable likelihood of substantial prejudice to his right to a fair trial by the dissemination of his confession, if proven inadmissible, throughout the community.
In the instant case, the record reveals the following facts.[6] On February 2, 1982, Phyllis Bratton, assistant manager of a Pizza Hut in Shreveport, was murdered during the course of an armed robbery. The victim was shot in the head and throat and left inside a cooler in the establishment. On February 3, the newspapers contained articles on the murder. Television newscasts on the same day reported the arrest of defendant, son of a prominent Shreveport educator, and his younger brother as a possible accessory. On February 4, a newspaper reported the arrest of defendant, outlined the details of the murder and robbery, and reported that defendant had "made a statement to the police admitting his involvement in the crime." This front page news item contained a picture of defendant. On February 5, a newspaper reported that a Caddo Parish prosecutor told the court, at defendant's initial appearance to appoint counsel, that defendant admitted committing the crime. Both newspapers reported that the grand jury was "expected to indict" defendant and followed with stories on February 19 that defendant had in fact been indicted for first degree murder and armed robbery. The articles on February 19 also reported the preliminary examination testimony of the investigating officer. Both news accounts told in detail how the police investigation lead to defendant and of the evidence that resulted. The papers also related the officer's testimony as follows: "I asked him point blank `did you kill Phyllis Bratton....' He said `yes sir, I did.'" Defendant's plea of not guilty was entered on March 9, 1982 and was also reported and recounted the "reported confession" and the preliminary examination testimony. The news media dubbed the crime as the "cooler murder."
After the indictment, the local papers continued to follow the progress of defendant's case. Defendant's motions to quash and to suppress were reported. In addition, the papers reported the subsequent investigation and release of defendant's brother. Tapes of the local television broadcasts contain generally the same information reported in the newspaper articles.
While there has already been extensive pretrial publicity in this matter,[7] we consider any further reporting by the news media of defendant's confession, if proven inadmissible, could unfavorably influence the jury venire. After all, defendant is accused of a capital offense. Our Code of Criminal Procedure has built-in safeguards not afforded to persons accused of lesser *1139 crimes which impose less severe penalties.[8] Hence, we should be overcautious when considering the due process rights of a person accused of a capital offense. Defendant's right to a fair trial can be protected from the adverse effects of pretrial publicity by simply closing the suppression hearing to the public and press who do not have an enforceable right to be present.
Under the circumstances, we consider that the trial judge abused his discretion in denying defendant a closed hearing on his motion to suppress his confession in this capital case. We must reverse.

DECREE
The ruling of the trial judge denying defendant a closed pretrial suppression hearing on the motion to suppress his confession is reversed. Defendant's motion to close the hearing to the public and press is granted. The case is remanded to the district court for further proceedings.
LEMMON, J., concurs and will assign reasons.
DIXON, C.J., dissents.
CALOGERO, J., dissents.
DENNIS, J., dissents with reasons.
DENNIS, Justice, dissenting.
I respectfully dissent.
The Louisiana public enjoys more than just a "strong societal interest" in open trial proceedings. Louisiana Constitution article I, § 22 flatly states that "[a]ll courts shall be open...." The uniform interpretation of the mandate that the courts "shall be open" by those state courts called upon to construe the provision in their constitutions is that this language confers an independent right on the public to attend civil and criminal trials and not simply a right in favor of the litigants to demand a public proceeding. See, e.g., State ex rel Harold Mail Co. v. Hamilton, 267 S.E.2d 544 (W.Va., 1980); In re Edens, 290 N.C. 299, 226 S.E.2d 5 (1976); Cohen v. Everett City Council, 85 Wash.2d 385, 535 P.2d 801 (1975); Phoenix Newspapers, Inc. v. Superior Court, 101 Ariz. 257, 418 P.2d 594 (1966). Typical of the reasoning of these courts is E.W. Scripps Co. v. Fulton, 100 Ohio Appeal 157, 125 N.E.2d 896 (1955), where the public interest was stated as follows:
It can never be claimed that in a democratic society the public has no interest in or does not have the right to observe the administration of justice. The open courtroom is as necessary and important in the interest in supporting the administration of justice as in the protection of the rights of a member of the public when on trial for a criminal offense.
The defendants cannot waive the right of the people to insist that the proceedings of the courts, insofar as practicable and in the interest of the public health and public morals, be open to public view
....
100 Ohio App. at 162, 167, 125 N.E.2d at 900, 903.
Additionally, Louisiana Constitution article XII, § 3 provides that "[n]o person shall be denied the right to observe the deliberations of public bodies and examine public documents, except in cases established by law." This prohibition and the open court guarantee can inure to the benefit of individuals but the sweeping language with which they are written makes it unreasonable to interpret them to be merely grants of a right to an individual that can be waived or which would vanish if not affirmatively raised by the individual.
Accordingly, I would hold that the trial court may not bar the public from a pretrial hearing because it would be contrary to these state constitutional provisions. The holding, however, should not be interpreted *1140 as guaranteeing the right of public access to all judicial proceedings. One obvious limitation is that jury deliberations and court conferences have been and are held in private. Despite the absence of any language in the constitution expressly excluding jury deliberation from the prohibition against secret deliberations, the tradition that such proceedings be held in private is so long and so well established that the tradition should be read into the section. The same is true of conferences of collegial courts. State ex rel Oregonian Pub. Co. v. Deiz, 289 Or. 277, 613 P.2d 23 (1980).
I am also persuaded to this view by the fact that each individual's right to a public trial is guaranteed by a different section of the constitution. Art. I, § 16 provides that "[e]very person charged with a crime is presumed innocent until proven guilty and is entitled to a speedy, public, and impartial trial in the parish where the offense or an element of the offense occurred, unless venue is changed in accordance with law." Therefore, I believe that the defendant may waive his right to a public trial, but that the public has a right to open court proceedings, subject to the exceptions noted above, which does not depend upon its assertion by the individual defendant. Furthermore, the defendant's right to a fair trial may be protected by a change of venue, a continuance or by other procedures in the event of unduly prejudicial publicity resulting from open pretrial hearings.
NOTES
[1] 416 So.2d 936 (La.1982). We also granted the motion of the Louisiana Press Association and the Society of Professional Journalists, Sigma Delta Chi, to file amicus curiae brief.
[2] La. Const. art. 1, § 22 (Access to Courts) provides:

All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights.
[3] Such is demonstrated by the decision's minority, speaking through Justice Blackmun: "At the same time, I do not deny that the publication of information learned in an open proceeding may harm irreparably, under certain circumstances, the ability of a defendant to obtain a fair trial. This is especially true in the context of a pretrial hearing, where disclosure of information, determined to be inadmissible at trial, may severely affect a defendant's rights. Although the Sixth Amendment's public-trial provision establishes a strong presumption in favor of open proceedings, it does not require that all proceedings be held in open court when to do so would deprive a defendant of a fair trial." Gannett Co. v. DePasquale, 443 U.S. 368, 439, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979).
[4] Gannett, supra, at 399, 99 S.Ct. at 2915 (Powell, J. concurring).
[5] In Gannett, the Court noted: "All of this does not mean, of course, that failure to close a pretrial hearing, or take other protective measures to minimize the impact of prejudicial publicity, will warrant the extreme remedy of reversal of a conviction. But it is precisely because reversal is such an extreme remedy, and is employed in only the rarest cases, that our criminal justice system permits, and even encourages, trial judges to be overcautious in ensuring that a defendant will receive a fair trial." Gannett, supra, 443 U.S. at 379 n. 6, 99 S.Ct. at 2905 n. 6.
[6] At the hearing, defendant introduced television tape recordings. In his brief to this court, defendant attached certain newspaper articles from the Shreveport Journal and Shreveport Times. These articles were not introduced in evidence. However, since the state has neither objected to their consideration or authenticity, we have considered them.
[7] Defense counsel's analysis of the newspaper coverage shows that between February 3, 1982 and May 11, 1982, twenty-three articles have appeared with approximately one hundred eighty-one inches of press in connection with the instant case.
[8] For example, La.Code Crim.P. art. 782 requires that a capital case be tried by a jury of twelve jurors, all of whom must concur to render a verdict. Article 791 requires sequestration of the jury in capital cases. Articles 905-905.9 and Rule 905.9.1 require additional procedures for sentencing in capital cases. As stated by the United States Supreme Court: "[D]eath is a different kind of punishment from any other which may be imposed...." Beck v. Alabama, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980).