THE NEWS AMERICAN DIVISION, THE HEARST
CORPORATION, INTERVENOR *v.* STATE
OF MARYLAND
ET AL.

[No. 409, September Term, 1981.]

*Decided July 21, 1981.*

The cause was argued before GILBERT, C. J., and MORTON and COUCH, JJ.

*Theodore Sherbow,* with whom were *William A. Agee* and *Sherbow, Shea & Tatelbaum, P.A.* on the brief, for appellant.

*Alfred L. Scanlan, Jr., Special Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Alan Betten, Special Assistant Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *Howard B. Gersh, Assistant State's Attorney for Baltimore City,* on the brief, for appellee State of Maryland.

*Gary S. Offutt, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellees George Green and Willie Green.

GILBERT, C. J., delivered the opinion of the Court.

## — HISTORY OF THE CASE —

This case appeared initially in this Court as an appeal from a so-called "gag order" passed by the Criminal Court of Baltimore (Pines, J.) dated April 29, 1981.[1] The order was sought by George Green and Willie Green (the Greens), appellees and cross-appellants, and defendants in a criminal proceeding involving allegations of a double murder, robbery, and related offenses. The Greens were upset by what they apparently felt was the prosecution's attempt to try its case against them in the media.

---

1. The order provided:

"(1) No party covered by this Order shall make or issue any extrajudicial statement, written or oral, for dissemination by means of public communication, relating to the above-captioned cases concerning:

(a) The prior criminal record, or the character or reputation of

The appellant, News American Division, The Hearst Corporation (News American) intervened in the Criminal Court and opposed the passage of the "gag-order." Following Judge Pines' signing of the order, the News American appealed to this Court and filed a motion requesting that the exigencies of the situation suggested that the appeal be advanced so

the Defendant, except a factual statement of the Defendant's name, age, residence, occupation, and family status;

(b) The existence of contents of any confession, admission, or statement given by the Defendant, or the refusal or failure of the accused to make any statement;

(c) The performance of any examinations or tests or the accused's refusal or failure to submit to an examination or test;

(d) The identity, testimony, or credibility of prospective witnesses, except that the identity of the victim may be announced if the announcement is not prohibited by law;

(e) The possibility of a plea of guilty to the offense charged or a lesser offense;

(f) Any opinion as to the Defendant's guilt or innocence or as to the merits of the case or the evidence in the case.

(2) The foregoing shall not be construed to preclude a party covered by this Order, in the proper discharge of his official or professional obligations, from announcing the fact and circumstances of arrest, the identity of the investigating and arresting officer or agency, and the length of the investigation; from making an announcement, at the time of seizure of any physical evidence other than a confession, admission or statement, which is limited to a description of the evidence seized; from disclosing the nature, substance, or text of the charge, including a brief description of the offense charged; from quoting or referring without comment to public records of the court in the case; from announcing the scheduling or result of any stage in the judicial process from requesting assistance in obtaining evidence; or from announcing without further comment that the accused denies the charges made against him.

(3) This Order does not apply to statements made, evidence given, or pleadings filed in this action. Of course, all proceedings in the action are and will continue to be public and matters of public record.

(4) No person covered by this Order shall avoid the effect of it by actions which deliberately bring about a violation of this Order. A copy of this Order shall be served on each party named herein, immediately upon its entry, and as each witness is summoned, a copy of this Order shall be served on him with the service of a summons.

(5) This Order is binding on all Court personnel, all attorneys, representing the State and defense, including both the assistants involved in the trials of the instant cases and the Deputy State's Attorney and State's Attorney for Baltimore City and the State Public Defender, District Public Defender, or the Defendant and Co-defendants (and their attorneys), and on each witness for both sides. It shall remain in force during the pending of any or all of the above-captioned cases before this Court."

that we might hear and determine it as expeditiously as possible. The Greens appealed the Criminal Court's having allowed the News American to intervene in the first instance.

While the appeal was pending before this Court, the State filed a suggestion of removal, and the Criminal Court (Dorf, J.) removed the matter to the Garrett County Circuit Court for trial. Thus, when the appeal was argued, we dismissed it as moot because the order of the Criminal Court was effective during the pendency of the Green case before that court only. Consequently, since it was removed to Garrett County, the "gag-order" was no longer viable.

Shortly after we dismissed the appeal as moot, the State's Attorney for Baltimore City withdrew his request for removal. In so doing, he breathed new life into the "gag-order." The News American, in light of the resurrection of the "gag-order," promptly moved for a reconsideration of our dismissal. Over the objection of the Greens we decided to grant the motion of the News American and to hear the case on its merits.

## — ISSUES ON APPEAL —

The appellant, News American, sees the issue before us as one of constitutional magnitude. It asserts:

"The trial court's order of April 29, 1981, violates rights guaranteed by the Constitution of the United States and the Constitution of Maryland as a prior restraint on freedom of speech and of the press and as a denial of access to information concerning judicial proceedings."

The Greens have a somewhat different view of the question before the Court. They aver that:

The News American should not have been allowed to intervene in the criminal case and that the trial judge erred in permitting the News American to intervene.

— *HOLDING OF THE COURT* —

For the reasons stated *infra,* we hold that the News American should not have been allowed to intervene in the criminal case between the State of Maryland and the appellees-cross appellants, George and Willie Green. That is not to say that the newspaper was without a way to seek relief from the order of the Criminal Court of Baltimore. The remedy, however, lies, not by way of direct intervention in the criminal case, but rather through a writ of mandamus, or mandatory injunction or declaratory judgment obtained from a court of competent jurisdiction.

— *THE LAW* —

The News American contends that although "the issue of the media's right to intervene in a criminal case has never been expressly addressed by a Maryland appellate decision . . . this court has impliedly held that the media may be permitted to intervene in a criminal case and appeal from an order adversely affecting their rights."

To support that statement, the newspaper cites the recent case of *Patuxent Publishing Corp. v. State,* 48 Md. App. 689, 429 A.2d 554 (1981), but they draw a far greater conclusion from *Patuxent Publishing* than is warranted. In *Patuxent,* the trial court allowed the media to intervene so that the media might mount a challenge to the court's entry of a "gag-order" and also an attack upon a second order that closed the "gag-order" hearing to the public. The standing of the media to intervene in the criminal case was neither raised in the trial court nor in this Court. Because it was not raised, it was not considered. We think that to deduce implicit approval of the media's right to intervene in a criminal case from an unraised and undecided issue is akin to presuming waiver from a silent record, and that is impermissible. *Johnson v. Zerbst,* 304 U.S. 458, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938).

Undoubtedly, the public and the press have a right of access to criminal trials. The Supreme Court of the United

States has said that that right is "implicit in the guarantees of the First Amendment." *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 100 S. Ct. 2814, 65 L. Ed. 2d 973 (1980).

Even absent the Constitutional provision, the right existed at common law and, thus, has been part of Maryland legal history since its founding in 1634. Following the Revolutionary War, the right to a public trial continued to be vested in the people and the press. *See* Maryland Constitution, Declaration of Rights, Article V.

While the press, as members of the general public, are entitled to a forum to assert their First Amendment rights, they possess "no special standing" or status to challenge court orders limiting access of the public and press to criminal proceedings. "Their privilege to attend court proceedings is neither greater nor lesser than that of members of the general public, for their status derives from the rights of the general public for whom they merely act as surrogate and as witness to what the general public could itself witness were it able to be present." *Oxnard Publishing Co. v. Superior Court of Ventura County,* 68 Cal. Rptr. 83, 88 (1968). The press, however, needs no special standing because as members of the general public, they have an absolute right to seek access to the criminal courts. *Id.; Wrather-Alvarez Broadcasting, Inc., v. Hewicker,* 147 Cal. App. 2d 509, 305 P.2d 236 (1957); *Kirstowsky and Hearst Publishing Co. v. Superior Court of Sonoma County,* 143 Cal. App. 2d 745, 300 P.2d 163 (1956); *E.W. Scripps Co. v. Fulton,* 100 Ohio App. 157, 125 N.E.2d 896 (1955).

The Court of Appeals of New York, in *United Press Association v. Valente,* 308 N.Y. 71, 123 N.E.2d 777 (1954), passed upon a matter wherein United Press had instituted an action in the nature of a writ of prohibition to restrain a judge in a criminal case from enforcing an order that excluded the general public and the press from the courtroom during the presentation of the people's case. The trial court's order was grounded on the theory that public decency required the exclusion. The Court of Appeals of New York, in agreeing, stated:

> "The fact that petitioners are in the business of disseminating news gives them no special right or privilege, not possessed by other members of the public. Since the only rights they assert are those supposedly given 'every citizen' to attend court sessions, . . . they are in no position to claim any right or privilege not common to 'every [other] citizen.' " (Citation omitted.) 123 N.E.2d at 783.

On the reverse side of the coin from the public-press access to the criminal courts is the ever important right of the accused to a fair and impartial trial. It sometimes happens that the right of the public and press collide head-on with the accused's right to a fair trial. When that occurs, the trial judge must undertake a delicate balancing of the respective rights of the public and press *vis-à-vis* those of the defendant, so as to resolve the matter in a way that protects the rights and privileges of both interests.

We think that is precisely what Judge Pines endeavored to do in the instant case.[2] Neither the public nor the press has been excluded from the courtroom during the trial of the Greens. The restraint order by the judge is directed to a particular class of persons, namely the lawyers and allied court personnel. The order prevents them from making any extra-judicial announcements, pronouncements, or comments about the case to the public or the media.

Although some "news sources" have been muffled, there is nothing in the order that prevents the media from publishing what they may learn about the case. *Cf. State v. Simants,* 194 Neb. 783, 236 N.W.2d 794 (1975), *rev'd on other grounds sub nom. Nebraska Press Association v. Stuart,* 427 U.S. 539, 96 S. Ct. 2791, 49 L. Ed. 2d 683 (1976).

---

2. We are not to be understood as approving or disapproving the order passed in the instant case. Our comments on the order are intended solely to indicate its scope, not its validity.

— *THIRD PARTY INTERVENTION IN CRIMINAL
PROCEEDINGS* —

Thus far, we have discussed the right *vel non* of the media to challenge a court order excluding the public and the press from a trial.

We now turn our attention to consideration of the dispositive issue in this appeal, the right *vel non* of *any* third party to intervene directly in a criminal prosecution.

In *Central South Carolina Chapter, Society of Professional Journalist, Sigma Delta Chi v. U.S. District Court for the District of South Carolina,* 551 F.2d 559 (4th Cir. 1977), *cert. denied,* 434 U.S. 1022, 98 S. Ct. 749, 54 L. Ed. 2d 771 (1978), the district court judge entered a pretrial order that regulated the conduct of participants in a trial, and also restricted the conduct and seating of the press in the courtroom. The United States Court of Appeals for the Fourth Circuit dismissed an appeal of the order by a professional society of journalists. Judge Widener wrote for the court:

> "It is clear that the Society should not participate in a case to which it is not a party. Even in civil cases, intervention requires an interest in the transaction or property before the court. FRCP 24. But the Society has no interest in the determination of the defendant's guilt or innocence to justify its intervention. Moreover, there is no counterpart to intervention in the criminal law or rules.
>
> . . . .
>
> Since we find nothing in the criminal law or rules permitting the Society to intervene in this case, to introduce collateral issues, and to disrupt the pending criminal trial, we dismiss the appeal." *Id.* at 563, 565.

A similar result was reached by the Washington State Supreme Court in *State v. Bianchi,* 92 Wash. 2d 91, 593 P.2d

1330 (1979). There, the prosecution and the defense appealed from an order of the trial court that permitted a newspaper to intervene for the sole purpose of contesting an order limiting access of the public and the press to the "Affidavit of Probable Cause Determination," which, we infer, set out some of the details of the case. Upon the motion of both the prosecution and the defense, the trial court had granted a protective order sealing the "Affidavit of Probable Cause Determination." The high court for the State of Washington held:

> "There is no rule, statute, or precedent in this state that would allow a third party to intervene in a criminal proceeding. The Washington Rules of Criminal Procedure make no provision for such intervention. Intervention of right is provided for in civil cases only if the intervening party claims 'an interest relating to the property or transaction which is the subject of the action.' Washington Superior Court Civil Rule 24. The only purpose of a criminal trial is the legal determination of the defendant's guilt or innocence. The Herald has no direct interest in this determination to justify its intervention and the disruption of the pending criminal proceedings inherent in the intervention process. The Herald's remedy must therefore lie in a separate action for declaratory judgment, mandamus, or prohibitions."

Earlier, our most western state, Hawaii, held that representatives of the press could not intervene in the pretrial stages of a criminal proceeding for the purpose of preventing closure of a preliminary hearing. The Hawaiian Supreme Court said in *Gannett Pacific Corp. v. Richardson,* 59 Haw. 224, 580 P.2d 49 (1978), that:

> "The Hawaii Rules of Penal Procedure make no provision for nonparty intervention in criminal proceedings, and the adjudicated cases hold that a third party is not entitled to intervene in a criminal

prosecution on the ground that he has no direct interest in the determination of the guilt or innocence of the accused to justify his intervention. . . . To permit a third party to intervene would 'unnecessarily encumber pending litigation and invite the entry of "nonparty-parties" when the right or interest sought to be enforced is not directly involved in the subject matter of the pending proceeding.' . . . His remedy must ordinarily lie in an original action in prohibition . . . or in mandamus. . . ." (Footnote omitted.) (Citations omitted.) 580 P.2d at 58.

*See also State v. Simants, supra.*

Just as in *Central South Carolina Chapter, Society of Professional Journalist, Sigma Delta Chi, Bianchi, Gannet Pacific,* and *Simants,* Maryland has no statute or rule of court addressing the intervention by third parties in criminal cases. Md. Rule 208, the only rule of Procedure concerned with intervention, provides in pertinent part:

"a. Of Right.

Upon timely application a person shall be permitted to intervene in an action: (a) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant is or may be bound by a judgment in the action; or (b) when the applicant is so situated as to be adversely affected by a distribution or other disposition of property which is in the custody or subject to the control or disposition of the court or an officer thereof.

b. Permissive.

1. Person.

Upon timely application a person may be permitted to intervene in an action when his claim or defense has a question of law or fact in common with the action."

A comment to Rule 208 declares that "[t]he language of these provisions, while taken substantially from Federal Rule 24 and New Jersey Rule 4:37, is practically declaratory of the existing Maryland common law."

There is no counterpart to Rule 208 in the criminal rules of procedure.[3] We think the omission of a rule sanctioning intervention in criminal cases was by way of purposeful design rather than mere omission. To allow third party intervention in a criminal prosecution would be to permit the introduction of collateral issues, disrupt the orderly process, and create confusion, where, in order to protect the rights of the accused, clarity is a manifest necessity. Aside from that distinct possibility, delay in the trial of the criminal case may be occasioned, as in the instant matter, by appeal of collateral issues.

We adopt the views and disposition of the United States Court of Appeals for the Fourth Circuit as expressed in the *Central South Carolina Chapter* case.

Accordingly, we dismiss the appeal.

> *Original appeal dismissed.*
> *Order of the Criminal Court of Baltimore, permitting intervention by appellant, reversed.*
> *Costs to be paid by appellant-cross appellee.*

---

3. Md. Rule 1 specifically states that "[t]he Rules in Chapters 100-600 do not apply to the proceedings dealt with in Chapter 700 [criminal causes]."