# NEWS AMERICAN DIVISION, THE HEARST CORPORATION, Intervenor v. STATE OF MARYLAND et al.

[No. 105, September Term, 1981.]

*Decided July 22, 1982.*

The cause was argued before MURPHY, C. J., and SMITH, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Theodore Sherbow,* with whom were *William A. Agee* and *Sherbow, Shea & Tatelbaum, P.A.* on the brief, for appellant.

*Gary S. Offutt, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellees.

RODOWSKY, J., delivered the opinion of the Court.

In this appeal we approve the trial court's having permitted a newspaper to intervene in companion criminal cases for the limited purpose of opposing the accuseds' request for an order restricting public comment by trial participants.

On March 20, 1981 two employees of a Baltimore restaurant, who had opened the premises that morning, were found murdered. The defendants, George Green and Willie L. Green, were arrested that day. A series of indictments, including two charges of murder and two charges of robbery with a deadly weapon against each defendant, were returned on March 23. The cases attracted considerable media attention in the Baltimore metropolitan area. Because of general publicity given to the cases, and particularly to statements made by the State's Attorney for Baltimore City concerning the cases, the crime situation in Baltimore City and the correctional system, defense counsel on March 26 filed a motion in the criminal cases for an order that would prohibit the prosecutors from discussing the cases with the media, and would require discovery materials to be sealed.[1] On March 30, the News American Division of The Hearst Corporation (Hearst) filed a petition in the criminal cases requesting that it be allowed to be heard in opposition to the defense motion. Hearst publishes a daily newspaper in Baltimore City which is distributed within Maryland and adjoining states. Hearst's petition averred that "it has the

---

[1]. The motion was initially made by George Green and later adopted by Willie Green.

duty and right under the Constitution and laws of the United States and the State of Maryland to gather and publish the news, including news concerning the activities and statements of public officials in connection with the investigation and prosecution of crime" and averred that the proposed order would cause it "irreparable damage." By order of April 1, the trial court granted Hearst leave to intervene and be heard in the criminal case "with respect to issues raised in [Hearst's] Petition of March 30, 1981." The defense motion was heard on April 1, 27 and 29 with Hearst participating by way of oral argument and legal memorandum. On April 29, 1981 the court entered an order (the gag order) prohibiting counsel, parties, witnesses and court personnel from making extrajudicial statements for dissemination by means of public communication relating to certain aspects of the criminal cases.[2] This order, by its terms, remained in effect during the pendency of the cases against George and Willie Green. Sealing of the discovery material was denied.

Hearst appealed to the Court of Special Appeals from the gag order and the Greens cross-appealed from the order allowing Hearst to intervene. The intermediate appellate court held that Hearst could not be permitted to intervene in the criminal cases, so that Hearst's appeal was dismissed and the order granting intervention was reversed. *News American v. State,* 49 Md. App. 422, 431 A.2d 1387 (1981).

We granted Hearst's petition for certiorari which presented two questions, one procedural and one substantive: (1) whether the Court of Special Appeals erred in reversing the trial court's order of intervention and in dismissing the appeal by Hearst; and (2) whether the gag order violated Hearst's constitutional rights "as a prior restraint on freedom of speech and of the press and as a denial of access to information concerning judicial proceedings."

---

**2.** The full text of the gag order is reproduced in News American v. State, 49 Md. App. 422, 423-24 n.1, 431 A.2d 1387, 1388 n.1 (1981), except that paragraph (1)(b) of the order in the record from the trial court reads: "The existence *or* contents of any confession . . . ." (Emphasis added.)

On the day certiorari was granted, Willie Green was convicted on the two charges of murder and on one of armed robbery. He was subsequently sentenced to two terms of life imprisonment, plus 20 years, all consecutive. After Hearst's appeal was argued in this Court, George Green pled guilty to four charges and was sentenced to two terms of life imprisonment and two terms of 20 years, all consecutive. Counsel for the Greens has subsequently moved to dismiss Hearst's appeal as moot. Before addressing the mootness issue, some legal background should be stated.

(i)

The gag order in this case was modeled substantially on recommendations for a standing rule of court proposed to the Judicial Conference of the United States by its Committee on the Operation of the Jury System in a report on "The 'Free Press-Fair Trial' Issue." 45 F.R.D. 391, 404-406 (1969).[3] That report considered that the Supreme Court in *Sheppard v. Maxwell,* 384 U.S. 333, 86 S. Ct. 1507, 16 L. Ed. 2d 600 (1966) had "laid down a mandate to the courts to deal with the problems caused by the impact of publicity on the jury system." 45 F.R.D. at 395. *Sheppard* affirmed the setting aside, on federal habeas corpus, of a state court murder conviction because the accused had been denied a fair trial due to the failure of the trial judge sufficiently to protect the accused from massive, pervasive and prejudicial publicity that attended his prosecution. Justice Clark for the Court there said:

> The fact that many of the prejudicial news items can be traced to the prosecution, as well as the defense, aggravates the judge's failure to take any action .... Effective control of these sources — concededly within the court's power — might well have prevented the divulgence of inaccurate infor-

---

**3.** This report was later supplemented and revised. *See* Supplemental Report of the Committee on the Operation of the Jury System on the "Free Press-Fair Trial" Issue, 51 F.R.D. 135 (1971); Revised Report of the Judicial Conference Committee on the Operation of the Jury System on the "Free Press-Fair Trial" Issue, 87 F.R.D. 519 (1980).

mation, rumors, and accusations that made up much of the inflammatory publicity, at least after Sheppard's indictment.

More specifically, the trial court might well have proscribed extrajudicial statements by any lawyer, party, witness, or court official which divulged prejudicial matters .... [*Id.* at 361, 86 S. Ct. at 1521, 16 L. Ed. 2d at 619.]

The Court has not had occasion, following *Sheppard,* to decide a case involving an order of the type entered in the instant matter and, more specifically, where objection to such an order is made by the press. However, other types of orders precipitated by concern over the effects of publicity on a fair trial have been considered by the Court on oppositions initiated by the press. *Nebraska Press Association v. Stuart,* 427 U.S. 539, 96 S. Ct. 2791, 49 L. Ed. 2d 683 (1976) struck down, as an invalid prior restraint, an order which directly prohibited the press from publishing information relating to confessions, admissions or other facts "strongly implicative" of the accused. In *Gannett Co. v. DePasquale,* 443 U.S. 368, 99 S. Ct. 2898, 61 L. Ed. 2d 608 (1979), it was held that members of the public have no constitutional right under the Sixth and Fourteenth Amendments to attend pretrial suppression hearings in criminal cases. That case resulted from a newspaper's challenge to an order closing such a proceeding.

*Gannett* also assumed, *arguendo,* that the First and Fourteenth Amendments may guarantee the press access to judicial proceedings in some situations, but held that "this putative right" had been given "all appropriate deference" by the trial court in that case. *Id.* at 392, 99 S. Ct. at 2912, 61 L. Ed. 2d at 629. It was noted that no spectators, including the petitioner's reporter, objected when the closure motion was made, that the petitioner was given an opportunity to be heard, that the denial of access was only temporary and that the trial court had "balanced the 'constitutional rights of the press and the public' against the 'defendants' right to a fair trial.'" *Id.* As to this factor the Supreme Court said:

The trial judge concluded after making this appraisal that the press and the public could be excluded from the suppression hearing and could be denied immediate access to a transcript, because an open proceeding would pose a "reasonable probability of prejudice to these defendants." Thus, the trial court found that the representatives of the press did have a right of access of constitutional dimension, but held, under the circumstances of this case, that this right was outweighed by the defendants' right to a fair trial. In short, the closure decision was based "on an assessment of the competing societal interests involved . . . rather than on any determination that First Amendment freedoms were not implicated." [*Id.* at 392-93, 99 S. Ct. at 2912, 61 L. Ed. 2d at 629.]

The springboard for Hearst's substantive contentions in this case is *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 100 S. Ct. 2814, 65 L. Ed. 2d 973 (1980), which set aside a trial closure order entered without factual findings to support closure and without inquiry into alternative solutions for insuring fairness. Eight Justices sat, of whom seven concurred in the reversal. The opinion of the Chief Justice, joined by Justices White and Stevens, said in announcing the judgment:

[T]he First Amendment guarantees of speech and press, standing alone, prohibit government from summarily closing courtroom doors which had long been open to the public at the time that amendment was adopted . . . .

It is not crucial whether we describe this right to attend criminal trials to hear, see, and communicate observations concerning them as a "right of access," . . . or a "right to gather information," for we have recognized that "without some protection for seeking out the news, freedom of the press could be eviscerated." *Branzburg v. Hayes,* 408 U.S. 665, 681[, 92 S. Ct. 2646, 2656, 33 L. Ed. 2d 626, 639]

(1972). The explicit, guaranteed rights to speak and to publish concerning what takes place at a trial would lose much meaning if access to observe the trial could, as it was here, be foreclosed arbitrarily. [*Id.* at 576-77, 100 S. Ct. at 2827, 65 L. Ed. 2d at 989. (footnotes omitted).]

This opinion concluded that the trial of a criminal case must be open to the public "[a]bsent an overriding interest articulated in findings." *Id.* at 581, 100 S. Ct. at 2830, 65 L. Ed. 2d at 992.

In a concurring opinion by Justice Brennan, joined by Justice Marshall, the emphasis was on the "structural interest served in opening the judicial system to public inspection." *Id.* at 592, 100 S. Ct. at 2836, 65 L. Ed. 2d at 1000. Because the state statute relied upon to close the proceedings granted unfettered discretion, those Justices saw no need in *Richmond Newspapers* to be concerned with "[w]hat countervailing interests might be sufficiently compelling to reverse this presumption of openness . . . ." *Id.* at 598, 100 S. Ct. at 2839, 65 L. Ed. 2d at 1003-04. Justice Stewart concurred because the trial judge had given no recognition to the right of representatives of the press and public to be present at the murder trial. He also said that "while there exist many alternative ways to satisfy the constitutional demands of a fair trial, those demands may also sometimes justify limitations upon the unrestricted presence of spectators in the courtroom." *Id.* at 600, 100 S. Ct. at 2840, 65 L. Ed. 2d at 1005 (footnotes omitted). Justice Blackmun, in his concurring opinion in *Richmond Newspapers,* accepted a First Amendment basis as his secondary position, but continued to believe that the analysis should more properly be placed on the Sixth Amendment, as he had done in his partially dissenting opinion in *Gannett.* There he recognized that the evaluation of a defendant's closure request would entail a balancing of factors. 443 U.S. at 440-41, 99 S. Ct. at 2936-37, 61 L. Ed. 2d at 660-61.

In its most recent decision on this general subject, the Court held to be unconstitutional a Massachusetts statute mandating that the trial of certain sex offenses be closed

during the testimony of a victim who is under the age of eighteen. It was recognized that a state has a compelling interest in safeguarding the physical and psychological well-being of a minor, but that that interest does not justify mandatory closure. Again referring to the balancing of factors, the Court said:

> [I]t is clear that the circumstances of the particular case may affect the significance of the interest. A trial court can determine on a case-by-case basis whether closure is necessary to protect the welfare of a minor victim. [*Globe Newspaper Co. v. Superior Court,* U.S., 102 S. Ct. 2613, 2621, 73 L. Ed. 2d 248, 258, 50 U.S.L.W. 4759, 4762 (1982) (footnote omitted).]

### (ii)

The substantive question presented by the petition for certiorari in this case is moot.[4] The gag order expired when the prosecution of George Green terminated. There is no existing controversy between the parties and no effective remedy which this Court could provide, even if the gag order were erroneous in whole or in part. *See Attorney General v. Anne Arundel County School Bus Contractors Association,* 286 Md. 324, 407 A.2d 749 (1979). A decision on the subsumed issue of whether and to what extent the public, including the press, has a First Amendment right of access to public statements which trial participants might desire to make, absent a gag order, would produce an opinion on an abstract proposition, which this Court does not sit to express. *See Health Services Cost Review Commission v. Holy Cross Hospital of Silver Spring, Inc.,* 290 Md. 508, 552, 431 A.2d 641, 663 (1981). The views of this Court on that "sensitive

---

4. It is therefore unnecessary for us to consider a motion to dismiss Hearst's appeal, which was filed by the Greens with their brief in this Court. That motion was based on Hearst's failure to cause to be included in the original record transmitted to this Court the transcript of the April 27 and 29 hearings, and associated exhibits. The materials were subsequently filed. Their importance related to the propriety of the trial court's issuance of the gag order.

question" are not "presently immediately pertinent." *Bishop v. Governor of Maryland,* 281 Md. 521, 525, 380 A.2d 220, 223 (1977). The extent to which any right of access, beyond that recognized in *Richmond Newspapers,* might affect the particular gag order entered in this case would, as the Supreme Court opinions indicate, require a balancing of factors. Decision on the merits would turn on the peculiar facts of the instant case. Thus the issue of the merits of the gag order does not fall within the exception to the mootness rule under which an opinion may be rendered " 'where the urgency of establishing a rule of future conduct in matters of important public concern is both imperative and manifest.' " *District 1199E, National Union of Hospital and Health Care Employees, Division of R.W.D.S.U., AFL-CIO v. The Johns Hopkins Hospital,* 293 Md. 343, 350 n.2, 444 A.2d 448, 451 n.2 (1982) (quoting *State v. Ficker,* 266 Md. 500, 507, 295 A.2d 231, 235 (1972)).

On the other hand, the procedural question raised in the instant matter does fall within the exception to the mootness doctrine. The problem of the route to be taken by the press in an effort to protect against a claimed infringement of First Amendment rights is likely to be a recurring one, particularly in the wake of *Richmond Newspapers.* The scope of the procedural problem is not limited to gag orders against trial participants. A common procedural issue arises when the press seeks to contest orders closing pretrial proceedings, closing trials or portions of trials, and sealing records of court proceedings. It is also of important, public concern that the trial courts and bar have an approved procedure to follow in such cases. Finally, there is a present necessity that the procedural question be addressed in this otherwise moot case. The opinion of the Court of Special Appeals would bar a motion by the press filed in the criminal case. That court has said the remedy lies "through a writ of mandamus, or mandatory injunction or declaratory judgment obtained from a court of competent jurisdiction." *News American v. State, supra,* 49 Md. App. at 426, 431 A.2d at 1389. Because we do not believe that view states the procedure to be followed, resolution of the matter should not await the next case presenting the question to come before this Court.

(iii)

Before turning to the procedural question however, a threshold issue raised by the Greens must be addressed. They contend that Hearst lacks standing to appeal. The argument is that Hearst may not assert the rights of the counsel, parties, court personnel or witnesses against whom the gag order operates directly, and that Hearst has no rights of its own to assert because the right of access extends only to public trials. This is really an attempt to have one of the elements of the merits decided in the guise of a standing argument. Such a "legal interest" approach to standing was rejected by the Supreme Court in *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 153, 90 S. Ct. 827, 830, 25 L. Ed. 2d 184, 188 (1970), where the Court stated:

> The "legal interest" test goes to the merits. The question of standing is different. It concerns . . . the question whether the interest sought to be protected by the complainant is *arguably* within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question. [Emphasis added.]

And *see Singleton v. Wulff,* 428 U.S. 106, 96 S. Ct. 2868, 49 L. Ed. 2d 826 (1976) (physicians have standing to challenge state Medicaid regulations which exclude funding for abortions unless medically indicated).

The *Data Processing* analysis of standing has been applied to media contests of restrictive orders where the media challenger also alleged injury in fact, as Hearst has done in this case. *See United States v. Cianfrani,* 573 F.2d 835 (3d Cir. 1978) (standing based on allegation of violation, by order closing suppression hearing, of rights to access and to receive and gather information about government activities); *United States v. Gurney,* 558 F.2d 1202 (5th Cir. 1977), *cert. denied,* 435 U.S. 968, 98 S. Ct. 1606, 56 L. Ed. 2d 59 (1978) (standing satisfied where media arguably suffered an injury with respect to news gathering and trial court order arguably affected media's rights under the First Amend-

ment); *CBS, Inc. v. Young,* 522 F.2d 234 (6th Cir. 1975) (standing satisfied where trial court order in civil case "gagging" counsel, parties and others denied media access to potential sources of information and thereby at least arguably impaired First Amendment rights).

The Fourth Circuit has held that reporters have standing to petition it for a writ of mandamus to review a gag order. The petitioners had a sufficient personal stake in the outcome of the controversy because the court did "not regard as wholly speculative the relationship between the district court's order and the plaintiffs' difficulties in seeking to perform their reportorial functions." *Central South Carolina Chapter, Society of Professional Journalists, Sigma Delta Chi v. Martin,* 556 F.2d 706, 708 (4th Cir. 1977), *cert. denied,* 434 U.S. 1022, 98 S. Ct. 749, 54 L. Ed. 2d 771 (1978).

Hearst has sufficient standing to claim that its First Amendment rights have been violated.

### (iv)

There would seem to be at least three ways by which the press, as a non-party to a case, might oppose an order that is claimed to infringe its First Amendment rights:

1. By an application to an appellate court for review, by extraordinary writ, of the action of the order-entering court;

2. By appearing before the order-entering court in the case in which the order is entered, with further review on direct appeal by the press from an adverse determination in that forum; and

3. By applying to another trial court, or to the order-entering court in a separate civil action, for an injunction or declaratory judgment, with further review by direct appeal.

We view as highly inappropriate the third possible alternative — a quest for an order in a separate case, filed in the order-issuing court or in another trial court, which seeks to alter the effect of the order issued. "It would, indeed, be an incongruous and dangerous situation [if] one Circuit Court

judge of this State could paralyze the entire administration of justice in the law courts thereof, both civil and criminal, by way of injunction. And this is not permitted." *Kardy v. Shook,* 237 Md. 524, 533, 207 A.2d 83, 88 (1965). Indeed, it appears that the decisions to date fall overwhelmingly within one or the other of the first two categories.

Illustrative of the first category are *United States v. Sherman,* 581 F.2d 1358 (9th Cir. 1978) (post-trial order directing media to "stay away" from jurors — mandamus); *Central South Carolina Chapter, Society of Professional Journalists, Sigma Delta Chi v. Martin, supra,* 556 F.2d 706 (4th Cir. 1977) (gag order of trial participants — mandamus);[5] *CBS, Inc. v. Young, supra,* 522 F.2d 234 (6th Cir. 1975) (gag order of trial participants — mandamus); *Oxnard Publishing Co. v. Superior Court of Ventura County,* 68 Cal. Rptr. 83 (Cal. App. 1968) (trial closure — mandamus); *Gannett Pacific Corp. v. Richardson,* 59 Haw. 224, 580 P.2d 49 (1978) (closure of preliminary hearing — prohibi-

---

5. The tangled procedural history of that litigation is well summarized by the United States Court of Appeals for the District of Columbia Circuit in United States v. Hubbard, 650 F.2d 293, 308 n.57 (1980):

*Cent. S.C. Chapter v. Martin,* 556 F.2d 706 (4th Cir. 1977), *cert. denied,* 434 U.S. 1022, 98 S.Ct. 749, 54 L.Ed.2d 771 (1978) and *Cent. S.C. Chapter v. United States Dist. Court,* 551 F.2d 559 (4th Cir. 1977) strikingly illustrate the procedural confusion that erupts when third parties claim some interest in the conduct of criminal proceedings. Those cases concerned a trial judge's restrictive order affecting the activities of the press during a criminal trial. The press' appeal from this order was dismissed because filed by a non-party. *Id.* at 563. Even treating the papers on appeal as a petition for writ of mandamus, the court concluded that relief was inappropriate under the accepted standards for issuance of the extraordinary writ, stating that it did not through this treatment reach the merits of the restrictive order. *Id.* at 562. Finally, treating the press' district court motion for stay as having commenced an independent action and the appeal as having been taken from denial of the stay, the appeal was dismissed because in that court's view a summary proceeding commenced by motion was inappropriate to the determination of the press' claims. *Id.* at 565. The court suggested that an independent action commenced by complaint might be an appropriate vehicle for the assertion of the kinds of interests raised by the press. When an independent action for declaratory and injunctive relief was filed and dismissed, however, the appellate court stated its belief that "mandamus is the proper remedy to request the relief prayed for," 556 F.2d at 707, treated the appeal on the merits as a petition for mandamus relief and modified the trial court's restrictive order. *Id.* at 708.

tion); *State v. Simants,* 194 Neb. 783, 236 N.W.2d 794 (1975), *rev'd sub nom. Nebraska Press Association v. Stuart,* 427 U.S. 539, 96 S. Ct. 2791, 49 L. Ed. 2d 683 (1976) (direct prior restraint on press — mandamus); *Oliver v. Postel,* 30 N.Y.2d 171, 331 N.Y.S.2d 407, 282 N.E.2d 306 (1972) (trial closure — CPLR Art. 78 proceeding in nature of mandamus); *State ex rel. Beacon Journal Publishing Co. v. Kainrad,* 46 Ohio St. 2d 349, 348 N.E.2d 695 (1976) (direct prior restraint on press — prohibition); *E.W. Scripps Co. v. Fulton,* 100 Ohio App. 157, 125 N.E.2d 896, *appeal dismissed as moot,* 164 Ohio St. 261, 130 N.E.2d 701 (1955) (trial closure — prohibition); *State ex rel. Newspapers, Inc. v. Circuit Court for Milwaukee County,* 65 Wis. 2d 66, 221 N.W.2d 894 (1974) (closure of immunity hearing — prohibition).[6]

However, this case does not involve an application to a Maryland appellate court for the issuance of an extraordinary writ in order to review an interlocutory order of a trial court.[7] Hearst came to the Court of Special Appeals by noting an appeal from the gag order entered in a criminal case in which Hearst had been allowed to intervene. The question presented here is whether the trial court erred in permitting that intervention.

A number of jurisdictions allow the press, as a non-party, to raise claims of First Amendment infringement by means of a motion filed in the case in which the challenged order is proposed or has been entered. *See United States v. Criden,* 675 F.2d 550 (3d Cir. 1982) (appeal by newspaper from order denying its motion, in criminal case, for access to sealed transcript of closed pretrial hearing); *United States v. Cianfrani, supra,* 573 F.2d 835 (3d Cir. 1978) (appeals by media and reporters from closure order opposed in trial court

---

**6.** In State v. Bianchi, 92 Wash. 2d 91, 593 P.2d 1330 (1979), the Supreme Court of Washington rejected intervention by a newspaper to challenge a record-closing order in a criminal case. That court stated that the proper remedy for vindication of the newspaper's First Amendment interest would lie in pursuing "a separate action for declaratory judgment, mandamus, or prohibition," *id.* at 93, 593 P.2d at 1331, but there was no further discussion of those procedures.

**7.** For a discussion of mandamus and prohibition in this Court *see* State *ex rel.* Sonner v. Shearin, 272 Md. 502, 325 A.2d 573 (1974).

by appellants, who had intervened in criminal case for that limited purpose); *United States v. Schiavo,* 504 F.2d 1 (3d Cir.), *cert. denied,* 419 U.S. 1096, 95 S. Ct. 690, 42 L. Ed. 2d 688 (1974) (appeal by newspaper and reporter from trial court order refusing to vacate direct prior restraint on publication); *Belo Broadcasting Corp. v. Clark,* 654 F.2d 423 (5th Cir. 1981) (appeal by broadcasters from denial of application to trial judge for copies of tapes of conversations admitted in evidence in criminal case); *United States v. Gurney, supra,* 558 F.2d 1202 (5th Cir. 1977) (appeal by newspapers and reporters from denial of their motion to vacate order restricting access to various matters not in evidence); and *Richmond Newspapers, Inc. v. Commonwealth,* 222 Va. 574, 281 S.E.2d 915 (1981) (appeals by newspaper from closure orders it had opposed as intervenor).

The Court of Special Appeals of Maryland, in an expedited appeal by a newspaper, has vacated a trial court order which closed the hearing to be held on a motion filed by the newspaper in a criminal case. The newspaper had been permitted to intervene in the criminal case in order to attempt to have the trial court vacate various closure orders previously entered by it. There was no issue raised, and no discussion by the appellate court, concerning the propriety of the procedure utilized by the newspaper. *Patuxent Publishing Corp. v. State,* 48 Md. App. 689, 429 A.2d 554 (1981).

A procedure under which the press appears by motion in the criminal case when an order restricting pretrial publicity is requested, or has been entered, has the advantage of initially presenting the issues to the trial judge for his consideration in the circumstances of the particular case. The trial judge is in a better position than an appellate court to evaluate matters which may be rapidly unfolding before him and in the community in which the criminal case is pending. The trial judge is also the one who must initially consider how effective alternative methods of protecting the fair trial right of the accused might be under the circumstances. Allowing the press to appear by motion in the criminal case

also furnishes the trial court with the benefit of argument by an advocate of First Amendment interests. Typically the request for a restrictive order will be made by the defense and there is little incentive on the part of the State to oppose it.

The principal objection raised to a non-party motion procedure is that it disrupts the orderly progress of the criminal case. Part of this objection is based on the label, "intervention." Obviously the press cannot intervene generally. Any such intervention must be confined to the issues relating to the proposed or existing restrictive order. This limited intervention is available only at the instance of one who asserts that his own, at least arguably existing, First Amendment rights are, or are about to be, violated. Within the foregoing framework, the necessary opportunity to assert First Amendment rights is, in our view, a source of less disruption than a procedure which begins with a separate suit or application for mandamus, mandatory injunction or declaratory judgment.

The absence of a rule of procedure, adopted under the rule making power and dealing generally with intervention in criminal cases, is not fatal to the limited intervention described above. In *Reyes v. Prince George's County,* 281 Md. 279, 300, 380 A.2d 12, 24 (1977) this Court announced a procedure for the appointment by the trial court of counsel to represent the interest adverse to that of a party sponsoring a test case that could otherwise be dismissed as collusive.

For the foregoing reasons the trial court in the instant matter followed the correct procedure in permitting Hearst to intervene for the limited purpose of opposing the Greens' motion for restrictive orders. Further, the gag order of April 29, 1981 by the Criminal Court of Baltimore was appealable by Hearst under the collateral order doctrine. As to Hearst, the gag order was final since it adjudicated the only interest which Hearst had in the case. *See United States v. Cianfrani, supra,* 573 F.2d at 845; *United States v. Gurney,*

*supra*, 558 F.2d at 1207; and *United States v. Schiavo, supra*, 504 F.2d at 4-5.

> *Judgment of the Court of Special Appeals dismissing the appeal by Hearst is reversed.*
>
> *Judgment of the Court of Special Appeals reversing the order of the Criminal Court of Baltimore granting limited intervention to Hearst is, in turn, reversed, without further proceedings.*
>
> *Costs to be paid by George Green and Willie L. Green.*