**GANNETT CO., INC., Intervenor Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee,**

v.

**Steven B. PENNELL, Defendant Below, Appellee.**

Supreme Court of Delaware.

Submitted: Sept. 26, 1989.

Decided: Sept. 29, 1989.

---

Richard G. Elliott, Jr., and David L. Finger, of Richards, Layton & Finger, Wilmington, on behalf of intervenor below, appellant.

Jeffrey M. Taschner, Peter N. Letang, and Kathleen Jennings, of the Dept. of Justice, Wilmington, on behalf of plaintiff below, appellee, State of Del.

Eugene J. Maurer, Jr., Wilmington, on behalf of defendant below, appellee, Steven B. Pennell.

Before CHRISTIE, C.J., and
HORSEY and HOLLAND, JJ.

HOLLAND, Justice:

Gannett Co., Inc. ("Gannett") filed a Notice of Appeal from an order entered by the Superior Court in a criminal proceeding brought by the State of Delaware ("State") against Steven B. Pennell ("Pennell").[1] This Court directed Gannett to Show Cause why its appeal should not be dismissed. Gannett has filed a response in support of its right to appeal.

This Court has concluded that: (1) Gannett has standing to seek review of the Superior Court's order; (2) that Gannett has a limited right to intervene in the underlying criminal proceedings, which gave rise to the Superior Court's order, and (3) that this Court has jurisdiction to hear Gannett's appeal. Therefore, the Notice to Show Cause will be discharged.

### Facts

Pennell has been indicted, *inter alia*, on three counts of Murder in the First Degree. If Pennell is convicted, the State has indicated that it will seek to have the death penalty imposed. The parties all agree that the Pennell case has been the subject of extensive pretrial publicity. On July 28, 1989, the judge presiding over the criminal

---

1. *State of Delaware v. Steven P. Pennell,* Cr.A. Nos. N88–12–0051, N88–12–0052 and N88–12– 0053.

proceedings in the Superior Court entered the following order:

> In order to protect the integrity of the jury in this case [*State v. Pennell*], I am taking the following steps:
>
> 1. I direct the Prothonotary to keep confidential the names of all jurors subpoenaed for this jury panel. The jury information sheet will be available only to the attorneys for the parties. The names will not be released to anyone else.
>
> 2. On jury selection days those jurors who respond will be assigned a number from 1 to 100. Those numbers will be placed on the juror information sheets delivered to the attorneys and the Court.
>
> 3. All jury selection in open Court will be accomplished by numbers and not by name.

On September 7, 1989, Gannett filed a motion to intervene in the criminal proceedings in the Superior Court, alleging that the July 28th order violated its First Amendment Rights. Gannett also filed a motion requesting the Superior Court to rescind that order. The State and Pennell both opposed Gannett's request.

On September 11, 1989, the Superior Court denied Gannett's motion to vacate its July 28th order. Since that date, the jury has been impaneled. The criminal trial is now in progress. The names of the jurors have not been disclosed to Gannett or otherwise made public by the Superior Court.

### Standing

■ The initial issue which we must address is Gannett's standing to seek review of the Superior Court's bench ruling of September 11, 1989, denying the motion to vacate the order of July 28, 1989. The test of standing is whether: (1) there is a claim of injury in fact; and (2) the interest sought to be protected is arguably within the zone of interest to be protected or regulated by the statute or constitutional guarantee in question. *Association of Data Processing Serv. Org., Inc. v. Camp,* 397 U.S. 150, 153–54, 90 S.Ct. 827, 829–30, 25 L.Ed.2d 184 (1970). The *Data Processing* analysis of standing has been applied to media contests of restrictive orders where the media has alleged injury, as Gannett has done in this case. *See United States v. Cianfrani,* 573 F.2d 835 (3d Cir. 1978) (allegation that order closing suppression hearing violated rights to access, receive and gather information about government activities conferred standing); *United States v. Gurney,* 558 F.2d 1202 (5th Cir.1977), *cert. denied,* 435 U.S. 968, 98 S.Ct. 1606, 56 L.Ed.2d 59 (1978) (where trial court order arguably affects media's First Amendment rights and order arguably injures media with respect to news gathering, standing is established).

Gannett is the publisher of a newspaper, which is circulated daily within the State of Delaware. The Superior Court's order has arguably affected a right within the zone of the media's interests which are protected by the First Amendment. We find that Gannett has standing to challenge that order.

### Free Press/Fair Trial

Pennell argues that the Superior Court's order is a proper exercise of its duty to protect his Sixth Amendment right to a fair trial. "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed...." U.S. Const. amend VI. The right to a jury trial, is applicable to the States through the Due Process Clause of the Fourteenth Amendment.[2] *Duncan v. Louisiana,* 391 U.S. 145, 149, 88 S.Ct. 1444, 1447, 20 L.Ed.2d 491 (1968).

> In essence, the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, "indifferent" jurors.... "A fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison,* 349 U.S. 133, 136 [75 S.Ct. 623, 625, 99 L.Ed. 942 (1955)]. In the ultimate analysis, only the jury can strip a man of his liberty or his life. In the language of Lord Coke, a juror must

---

2. That right is also guaranteed by the Delaware Constitution. Del. Const. art I, § 4.

be as "indifferent as he stands unsworne." Co. Litt. 155b. His verdict must be based upon the evidence developed at the trial.

*Irvin v. Dowd,* 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961).

Gannett argues that the Superior Court's order violates rights which are equally fundamental in our jurisprudence and are guaranteed to it by the First Amendment which states that: "Congress shall make no law ... abridging the freedom of speech, or of the press...." U.S. Const. amend. I. Those guarantees have been applied, through the Fourteenth Amendment, to invalidate restraints on freedom of the press imposed by the States. *See, e.g., Miami Herald Publishing Co. v. Tornillo,* 418 U.S. 241, 94 S.Ct. 2831, 41 L.Ed.2d 730 (1974); *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); *Near v. Minnesota ex rel. Olson,* 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931). In particular, the First Amendment has been interpreted to interdict restraints imposed by State courts in criminal proceedings. *See, e.g., Craig v. Harney,* 331 U.S. 367, 67 S.Ct. 1249, 91 L.Ed. 1546 (1947); *Bridges v. California,* 314 U.S. 252, 62 S.Ct. 190, 86 L.Ed. 192 (1941).

It is inconceivable that the authors of the Bill of Rights were unaware of the potential conflicts between the right to a fair trial by an unbiased jury and the guarantee of freedom of the press. *Nebraska Press Assn. v. Stuart,* 427 U.S. 539, 547, 96 S.Ct. 2791, 2797, 49 L.Ed.2d 683 (1976). Nevertheless, the authors of the Bill of Rights did not undertake to assign priorities as between First Amendment and Sixth Amendment rights, i.e., ranking one as superior to the other. *Id.* at 561, 96 S.Ct. at 2804. The United States Supreme Court has held that:

> "if the authors of these guarantees, fully aware of the potential conflicts between them, were unwilling or unable to resolve the issue by assigning to one priority over the other, it is not for [the

Courts] to rewrite the Constitution by undertaking what they declined to do." *Id.*

Thus, the United States Supreme Court has also declined to establish a priority between the guarantees of the First Amendment and the Sixth Amendment, which would be applicable in all circumstances. *Id.* Each case must be examined and decided according to its own facts. *Id.* at 551, 96 S.Ct. at 2799. Consequently, it has become the trial judge's primary responsibility to govern each judicial proceeding in a way that ensures the guarantees of both the First and the Sixth Amendments. *See, e.g.,* Annotation, *Propriety of Order Forbidding News Media from Publishing Names and Addresses of Jurors in Criminal Cases,* 36 A.L.R. 4th 1126 (1985); *Lexington Herald–Leader Co. v. Meigs,* 660 S.W.2d 658 (Ky.1983); *see also* S. Metcalf, *Rights and Liabilities of Publishers, Broadcasters and Reporters* (1982–1989).

### Right to Intervene

■ In the overwhelming majority of criminal trials, there are few threats to either First Amendment or Sixth Amendment rights. *Nebraska Press Assn. v. Stuart,* 427 U.S. at 551, 96 S.Ct. at 2799. However, "when the case is a 'sensational' one tensions develop between the right of the accused to [a fair] trial by an impartial jury and the rights guaranteed others by the First Amendment." [3] *Id.*

Once the tension between the First Amendment and the Sixth Amendment has developed, there is a need to provide a judicial forum for its resolution. The Maryland Court of Appeals, recently addressing this issue, stated:

> A procedure under which the press appears by motion in the criminal case when an order restricting pretrial publicity is requested, or has been entered, has the advantage of initially presenting the issues to the trial judge for his consideration in the circumstances of the particular case. The trial judge is in a better position than an appellate court to evaluate matters which may be rapidly unfold-

---

**3.** The parties agree that the Pennell case has become a sensation.

ing before him and in the community in which the criminal case is pending. The trial judge is also the one who must initially consider how effective alternative methods of protecting the fair trial right of the accused might be under the circumstances. Allowing the press to appear by motion in the criminal case also furnishes the trial court with the benefit of argument by an advocate of First Amendment interests.

The principal objection raised to a non-party motion procedure is that it disrupts the orderly progress of the criminal case. Part of this objection is based on the label, "intervention." Obviously the press cannot intervene generally. Any such intervention must be confined to the issues relating to the proposed or existing restrictive order. This limited intervention is available only at the instance of one who asserts that his own, at least arguably existing, First Amendment rights are, or are about to be, violated. Within the foregoing framework, the necessary opportunity to assert First Amendment rights is, in our view, a source of less disruption than a procedure which begins with a separate suit or application for mandamus, mandatory injunction or declaratory judgment.

*News American Div., Hearst Corp. v. State*, 294 Md. 30, 447 A.2d 1264, 1271–72 (1982). We find this reasoning to be persuasive. We agree that intervention by the news media in a criminal proceeding, for the limited purpose of protecting their First Amendment rights, appears to be the most desirable procedure for providing a judicial resolution of those rights, vis-a-vis the competing Sixth Amendment rights of the defendant.

There is no Delaware rule or statute which precludes such intervention. In fact, it has been the practice of the courts to allow it. *See Van Arsdall v. State*, Del.

Supr., 486 A.2d 1 (1984); *State v. Shipley*, Del.Super., 497 A.2d 1052 (1985). We hold that Gannett has a limited right to intervene in this criminal proceeding, for the purpose of challenging the order which arguably infringes upon its First Amendment rights. *See News American Div., Hearst Corp. v. State*, 447 A.2d at 1272.

### Collateral Order Doctrine

■ This Court's jurisdiction to hear appeals is set forth in the Delaware Constitution. This Court does not have jurisdiction to hear an interlocutory appeal in a criminal case. Appeals of right are authorized in criminal cases only from final orders. Del. Const. art. IV, § 11(1)(b); *State v. Cooley*, Del.Supr., 430 A.2d 789 (1981). Adherence to this rule of finality has been particularly stringent in Delaware in criminal prosecutions because "the delays and disruptions attendant upon intermediate appeal," which the rule is designed to avoid, "are especially inimical to the effective and fair administration of the criminal law." *Di Bella v. United States*, 369 U.S. 121, 126, 82 S.Ct. 654, 658, 7 L.Ed.2d 614 (1962). *Accord, Cobbledick v. United States*, 309 U.S. 323, 324–26, 60 S.Ct. 540, 541–42, 84 L.Ed. 783 (1940).

Similar limitations are imposed upon the federal circuit courts of appeals by 28 U.S.C. § 1291. Nonetheless, a number of the Federal Courts of Appeals have held that Section 1291 does not bar an immediate appeal from an order which is entered in a criminal proceeding that implicates the news media's First Amendment Rights.[4] In reaching this conclusion, those courts have taken the position that, with respect to the news media, such orders fall within the so-called "collateral order" exception to the final judgment rule, and are thus "final decisions." The collateral order exception was first announced in *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct.

---

**4.** *See, e.g., United States v. Gerena*, 869 F.2d 82, 83–84 (2nd Cir.1989); *United States v. Raffoul*, 826 F.2d 218, 221–22 (3rd Cir.1987); *Applications of National Broadcasting Co.*, 828 F.2d 340, 343 (6th Cir.1987); *United States v. Smith*, 787 F.2d 111, 113 (3rd Cir.1986); *United States v. Cianfrani*, 573 F.2d at 844–45. *See also United*

*States v. Corbitt*, 879 F.2d 224, 227 n. 1 (7th Cir.1989); *Matter of New York Times Co.*, 828 F.2d 110, 113 (2nd Cir.1987), *cert. denied*, 485 U.S. 977, 108 S.Ct. 1272, 99 L.Ed.2d 483 (1988); *Application of The Herald Co.*, 734 F.2d 93, 96 (2nd Cir.1984).

1221, 93 L.Ed. 1528 (1949). In *Cohen*, the Supreme Court defined collateral orders as:

> that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.... We hold this order appealable because it is a final disposition of a claimed right which is not an ingredient of the cause of action and does not require consideration with it.

337 U.S. at 546–47, 69 S.Ct. at 1225–26.

We find that, as to Gannett, the order of the Superior Court in the present case "constituted a final decision since it determined a [civil] matter independent of the issues to be resolved in the criminal proceeding itself, bound persons who were non-parties in the underlying criminal proceeding and had a substantial, continuing effect on important rights." *United States v. Schiavo*, 504 F.2d 1, 5 (3rd Cir.), *cert. denied*, 419 U.S. 1096, 95 S.Ct. 690, 42 L.Ed.2d 688 (1974). This Court has jurisdiction to hear an appeal from such a final order by the Superior Court. Del.Const. art. IV, § 11(1)(a).

### Motion to Expedite Appeal

■ Gannett has filed a motion to expedite this appeal. That motion has been held in abeyance by this Court while the Notice to Show Cause was being considered. It is now appropriate to address that motion.

The criminal trial, which is currently in progress, is expected to continue for several weeks. Gannett argues that this appeal should be expedited for two reasons. First, it argues that the Superior Court's July 28, 1989 order constitutes a daily infringement upon its First Amendment rights. Second, Gannett's claims may be-

come moot if the criminal trial is concluded before this appeal.

This Court has determined that the First Amendment issue raised by Gannett should be addressed and answered, if possible, before the criminal trial has been completed. Therefore, Gannett's motion to expedite this appeal will be granted.[5]

### Amicus Curiae

In this case, the State and Pennell oppose the position that has been taken by Gannett and have indicated that if this appeal proceeds, they will both argue that the Superior Court's order should be affirmed. In the usual appeal, the merits of the legal issues presented are adequately framed by the competing interests of the parties. However, this is not a usual appeal.

This appeal has been expedited. Therefore, it will be proceeding simultaneously with the criminal trial that is now in progress. The attorneys for the State and Pennell will be required to devote their full time to the merits of the criminal trial on a daily basis. That trial will undoubtedly also require preparation at night and on weekends. Those attorneys now have the additional professional responsibilities which are involved with this appeal. Therefore, the Court has concluded that the interests of justice would be served if an attorney were appointed to file a brief, as an *amicus curiae*, in addition to the briefs filed by the State and Pennell. Supr. Ct.R. 28.

### Conclusion

The Notice to Show Cause that was issued to Gannett is DISMISSED. Gannett's motion to expedite this appeal is GRANTED.

---

5. A scheduling conference will be arranged with    counsel.